614 A.2d 709

Rodney JAMES, Executor of the Estate of Patricia James,
and Rodney James, in his own right, Appellant,

v.

Maeve NOLAN, M.D., An Individual, Firm
Labs Service, P.C., A Corporation.

Superior Court of Pennsylvania.

Argued May 19, 1992.

Filed Sept. 9, 1992.

Paul F. Laughlin, Pittsburgh, for appellant.

David R. Johnson, Pittsburgh, for appellees.

Before ROWLEY, President Judge, and MONTEMURO and HESTER, JJ.

ROWLEY, President Judge:

In this appeal from the judgment entered on the jury verdict in favor of appellee Maeve Nolan, M.D., and Firm Labs Service, P.C. (hereinafter "appellees"), appellant Rodney James (hereinafter "appellant") seeks a new trial based on his contention that the trial court erred in several respects and that the jury's verdict was inconsistent with the law and the facts of this case. The following four issues have been raised for our consideration: (1) whether the jury's finding that appellee was negligent but that her negligence was not a substantial factor in causing appellant's harm was inconsistent [1]; (2) whether the trial court should have admitted the

---

1. Appellees argue that this issue has been waived by appellant's failure to raise the issue in the trial court. The courts of this Commonwealth have a long-standing rule prohibiting the introduction of new issues at the appellate level. *Lancaster County Tax Claim Bureau v. Valenti*, 144 Pa.Cmnwlth. 238, 240, 601 A.2d 445, 446 (1991).

The trial court ruled that the issue had not been waived since all persons but jurors, including counsel, were ordered from the courtroom immediately after the jury was polled. In deference to the trial court, we will consider the appellant's inconsistency argument. However, we believe that the issue *was* waived.

Appellant did not object to the verdict form proposed by the court even though it was obvious that the form permitted the jurors to find negligence on the part of appellee Nolan, in response to the second question, and an absence of proximate cause, in response to the third question. Further, although the judge asked individuals to leave the courtroom after accepting the verdict, we believe that counsel had an opportunity to rise at the point when the jury was being polled, and request a conference with the court so that any inconsistency in the jury's verdict could be clarified. Normally, such inaction constitutes

Pennsylvania Blood Bank statute into evidence [2]; (3) whether the trial court's jury instructions adequately addressed the concept of "substantial factor;" and (4) whether the trial court erred in permitting testimony and argument regarding various factors, rather than just the one advanced by appellant, which could have caused appellant's harm. Having thoroughly reviewed the record and considered the arguments of the parties, we affirm.

Recently, this Court reiterated the standard of review which we utilize in evaluating the appellant's claims in the instant appeal:

When assessing the denial of a motion for new trial, the Superior Court will reverse only where the [trial] court has clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case.

*Lilley v. Johns–Manville Corporation,* 408 Pa.Super. 83, 95, 596 A.2d 203, 209 (1991).

The factual and procedural history of this case is as follows: Appellant filed a negligence suit against various defendants in his own name and as executor of the estate of his wife, a deceased blood technician (Patricia James) who was employed by the McKeesport Hospital's blood bank prior to her demise. In his action, he claimed damages which resulted from his wife's contraction of Acquired Immune Deficiency Syndrome (hereinafter "AIDS") in the course of her performance of an apheresis procedure on a patient whose blood had not been tested for the human immunodeficiency virus (hereinafter "HIV") prior to the procedure, but which would ultimately reveal the presence of HIV. By the time of trial, appellees were the only defendants remaining in the case. Following a

waiver. *See Krock v. Chroust,* 330 Pa.Super. 108, 478 A.2d 1376 (1984); *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1964).

2. For the reasons given in footnote 1 above, we will consider the merits of the issue. However, we note that normally this issue would be waived because appellant's counsel made no attempt to preserve it for appeal. No objection was made after the jury charge regarding the court's failure to read the precise language of the Blood Bank Act. *See Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974).

jury trial, a verdict was returned in favor of appellees. Post-verdict motions were denied in a comprehensive twenty-eight page memorandum opinion by the trial judge, whereupon the instant appeal was taken.

Patricia James, appellant's decedent, was employed by the McKeesport Hospital in the capacity of assistant supervisor of the blood bank when the events involved in this case took place. As a result of her position, she was required to act as supervisor in the absence of the blood bank's regular supervisor, Marilyn McDonough. At all times relevant to this action, Ms. McDonough was on vacation and Patricia James was acting as supervisor of the blood bank.

At the time that this cause of action arose, appellee, Dr. Maeve Nolan, was medical director of the McKeesport Hospital blood bank, but she was not an employee of the hospital. Appellee Nolan owned a professional corporation, appellee Firm Labs Service, which billed the hospital for the professional services of Dr. Nolan.

On December 3, 1986, a patient at McKeesport Hospital was in desperate need of a platelet transfusion from a family member. The patient's attending physician advised appellee Nolan of the immediate need for platelet apheresis because Dr. Nolan, as director of the blood bank, was the only person who could schedule an apheresis procedure. A relative was located and told to report to the blood bank for preliminary blood work in preparation for the potential donation of his blood.

That afternoon, the potential donor arrived at the lab and blood was drawn for tests routinely performed on a prospective donor's blood. The hemoglobin, hematocrit and white blood cell levels in his blood were tested immediately to ascertain whether the donor could withstand the apheresis process without harming his own health. Within an hour, the results were returned as normal and appellee Nolan scheduled the apheresis procedure for the next day, December 4, 1986.

As a matter of routine, prior to the ultimate transfusion of the platelets into the patient, additional tests (including tests

for hepatitis and HIV) were to be performed on the donor's blood in order to determine whether his platelets would be suitable for transfusion. These tests were to be performed by a lab technician assigned to the task by the blood bank supervisor, or in her absence, the acting supervisor. As the physician in charge of the blood bank, appellee Nolan never did the actual testing of potential donors' blood. McKeesport Hospital protocol mandated that the blood be tested for HIV during the morning shift because the test requires about four hour's time and the morning shift is the most heavily staffed.

In the instant case, the donor's blood was drawn on the afternoon of December 3rd and the apheresis procedure was scheduled for the next morning, December 4th, due to the patient's urgent need for the platelets. Therefore, due to the medical urgency of the situation, the donor's blood had not been tested for HIV prior to commencement of the procedure, but was to be so tested prior to ultimate transfusion of the platelets.

During an apheresis procedure, the donor is attached to a centrifuge with a needle in each arm. The donor's blood continuously flows from one arm into the machine and back into the other arm while the machine separates out the platelets from the other components of the donor's blood. The procedure requires the participation of two healthcare workers—one to operate the machine and the other to assist the patient.

In the instant case, the decedent, Patricia James, operated the machine with the assistance of Georgia Gentile. In the course of the procedure, technical difficulties ensued with the machine's tubing, automatically causing the machine to stop. Mrs. James attempted to remedy the problem by removing and replacing the tubing, rather than terminating the process or contacting the blood bank director, appellee Nolan. No reference was made by the two technicians to the machine's manual.

According to the trial testimony, Mrs. James removed the clogged segments of tubing containing the donor's blood without clamping them or restricting the flow of blood in any

manner. The donor's blood spurted on the machine and all over Mrs. James' hands and arms. In violation of the hospital's infection control policy, and despite the availability of a sink and gloves within several steps of the machine, Mrs. James' did not wash the blood off herself, but rather, cleaned the machine and mopped up the blood around the area of the machine without wearing gloves.

While Mrs. James was still covered with blood, forty-five minutes elapsed as she re-tubed the machine and set it back into operation. Finally, at the suggestion of her assistant, Mrs. James washed off the blood which had accumulated on her hands and arms. Several experts testified at trial that the length of an exposure to infected blood increases the risk of infection.

The apheresis procedure was completed and the donor was discharged. Subsequently, the tests remaining to be run on the donor's blood sample were conducted and the HIV test revealed a positive result. Due to her exposure to the donor's blood during the apheresis procedure, Mrs. James was tested immediately for HIV. Initially, she tested negative, but she later developed a positive HIV test and eventually died of AIDS in October of 1989.

Appellant subsequently filed suit alleging that appellee Nolan negligently caused Mrs. James to become infected with the AIDS virus. The allegations of negligence included the following: (1) a complaint that appellee Nolan had improperly scheduled the apheresis procedure before the results of the donor's HIV test were known, (2) a claim that appellee Nolan had failed to warn Mrs. James, as operator of the machine, that the test results were not yet known, and (3) a complaint that appellee Nolan should have required the apheresis technicians to wear gloves either at all times, or in this particular instance because the results of the test had not yet been determined. On appeal, appellant claims that he abandoned the second two theories of negligence prior to trial. However, the record reveals that evidence was introduced by appellant at trial which was relevant to those theories and a great deal of appellees' case was relevant in rebutting those two theories.

During the trial, it was established that as of December 4, 1986, there was no evidence that HIV had ever been transmitted to a healthcare worker by way of a so-called "splash" like the one involved in this case. The state of the art testimony was that a healthcare worker was subject to contracting the virus from a patient only from a blood-to-blood transmission through a needle prick or by being cut with some other sharp object which was contaminated with HIV. Various theories were then presented at trial as to how the blood encountered by Mrs. James in the apheresis procedure could have infected her.

At the conclusion of the trial, the court denied appellees' motion for a directed verdict and advised the parties' attorneys that the case would be submitted to the jury on the basis of special interrogatories. Those questions were presented to counsel for approval and counsel for appellant did not object to them. An objection to them was made, however, by appellees' counsel because they failed to include any questions concerning assumption of the risk.

The jury's verdict was in response to the first three questions on the verdict form. They found by a fair preponderance of the evidence that Mrs. James became infected with HIV as a result of the blood exposure on December 4, 1986. Also by a fair preponderance, the jury found that appellees negligently breached a duty of care owed to Mrs. James but that appellees' negligent breach of the duty owed to Mrs. James was not a substantial factor in causing her harm.

After the verdict was read, the jury was polled and all twelve jurors indicated that they agreed with the verdict as returned. At no time prior to, during, or after this poll did appellant object to the verdict or indicate any desire to address the court and consequently, Judge Wettick cleared the courtroom of all persons, other than the jury. Thereafter, appellant moved for a new trial on several grounds. The motion was denied and this timely appeal was taken.

In seeking a new trial, appellant first contends that the jury's verdict in this case was inconsistent with the facts adduced at trial. In reviewing this contention, we note that:

It is well established law in Pennsylvania that there is a presumption of consistency with respect to a jury's findings which can only be defeated when there is no reasonable theory to support the jury's verdict.

*Goldmas v. Acme Markets, Inc.*, 393 Pa.Super. 245, 251, 574 A.2d 100, 103 (1990); *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 440, 539 A.2d 871, 875 (1988). It is also firmly established that strict form is not required in a verdict. All that is essential is that a jury's intention be clearly understood and free of ambiguity. *Rusidoff v. DeBolt Transfer, Inc.*, 251 Pa.Super. 208, 211, 380 A.2d 451, 453 (1977).

With those considerations firmly in mind, we turn to appellant's argument that only one theory of negligence was submitted to the jury and therefore, because the jury found that appellees were negligent, they were then compelled by the evidence in this case to find further that appellees' negligence was a substantial factor in causing Mrs. James to become infected with HIV. We disagree.

█ As argued by appellees, a review of the trial court's charge to the jury, on reasonable man common law negligence and the role that contributory negligence plays in the "substantial factor" analysis of legal cause, reveals that the jury could have decided the way that it did for at least two reasons; either because they found appellees' failure to warn Mrs. James that the blood had not yet been tested was negligent but that her own knowledge of that fact mooted that negligence as a substantial factor *or* because they found that Mrs. James' own conduct was the sole substantial factor of her harm, notwithstanding any negligence on the part of appellees. There is voluminous evidence of record which would fully support either finding and therefore, we conclude that the verdict was neither improper nor ambiguous.

In sole support of his argument, appellant cites us to *Chiaverini v. Sewickley Valley Hospital*, 409 Pa.Super. 630, 598 A.2d 1021 (1991) where this Court upheld a trial court order granting a new trial where an inconsistent verdict was returned by the jury. However, as the appellant himself

states in his brief, the jury in that case returned the following answers on a verdict form containing interrogatories:

1. Did you find that the Defendant was negligent? Yes.

2. Was the Defendant's negligence a substantial factor in bringing about the Plaintiff's harm? No.

3. State the amount of damages, if any, sustained by the Plaintiff as a result of the occurrence. $50,000.00

*Id.,* 409 Pa.Superior Ct. at 632, 598 A.2d at 1022. Obviously, the *Chiaverini* case is entirely different from the instant case. There, the jury found that the defendant's negligence was not a substantial factor in causing plaintiff's harm but nevertheless went on to find that the defendant was liable to plaintiff for damages. In sharp contrast, the jury in the instant case exercised its judgment after reviewing all of the evidence presented and found that the events which occurred after the blood spilled were too attenuated from appellees' negligence to have been *legally* caused by such negligence.

We find support for our conclusion on this issue in *Goertel v. Muth,* 331 Pa.Super. 179, 480 A.2d 303 (1984). *See also, Goldmas v. Acme Markets, Inc.,* 393 Pa.Super. 245, 574 A.2d 100 (1990); *Hilbert v. Katz,* 309 Pa.Super. 466, 455 A.2d 704 (1983). In *Goertel,* as in the instant case, the jury found that the defendant had been negligent but that the negligence was not a substantial factor of plaintiff's harm. However unlike the case we now consider, the jury in *Goertel* went on to apportion the amount of negligence they attributed to each party, finding the plaintiff 90% negligent and the defendant only 10% negligent. There, as in the instant case, the jury was polled and, as in the case before us, they unanimously indicated that they intended to find that the defendant was negligent but that the defendant's negligence was not a substantial factor in causing plaintiff's harm.

In *Goertel,* this Court did not perceive confusion in the jury's conclusions, but instead concluded that the 90–10% allocation of liability actually served to buttress the jury's intention to find that the negligence was not the legal cause of any harm suffered. In so concluding, the Court emphatically stated that:

"... we cannot become so enmeshed in language that we ignore the clear expression of a conscientious lay jury. The record demonstrates without question that they exerted every effort to perform their duties in accordance with the instructions given and to convey to the court and litigants with all the clarity they could summon the results of their deliberations. No more can be reasonably required [from] those not trained in the law. Nor can we discard their diligent effort because of an asserted lack of precision in legal expression."

*Id.* 331 Pa.Super. at 186, 480 A.2d at 307. For the same reasons as enunciated in *Goertel,* we conclude that the jury's verdict rendered in the instant case must stand.

We note that our conclusion on this issue is buttressed by the fact that the trial judge specifically charged the jury on the various results which they could reach in their "substantial factor" analysis of legal cause. In the context of an automobile accident, the court specified that the jurors could return the precise verdict which they did. In that regard, the court stated:

Let us assume in this case that the defendant, Dr. Nolan, was a driver and let's assume the plaintiff, Patricia James, was a pedestrian who was hit by Dr. Nolan while she was driving. Okay, the first question—let's go back to the example that I gave you first, if you will remember, in the opening statement.

In the first example we had Mrs. James crossing the street with the light, having looked both ways and what we have is Dr. Nolan's car coming down, speeding, goes against the red light, crashes through the intersection and hits Patricia James.

\* \* \* \* \* \*

Let me give you a variation on that. Let's suppose that Dr. Nolan is supposed to drive with eyeglasses but that she wasn't wearing her eyeglasses but she was proceeding slowly and Mrs. James leaps out in front of the car.

In that case, the first thing you'd say is well, yes, she did breach a duty of care because she is supposed to be wearing

eyeglasses. Then you have to move on to Question 3 [on the verdict form] and suppose you found, look, it is quite clear she saw Mrs. James the minute Mrs. James jumped out because Mrs. James jumped out so close to her, so it didn't matter that she wasn't wearing her eyeglasses, the same accident would have occurred.

*In that case, then you would check [No. 3] no, that it wasn't a substantial factor. So you come back to court saying her negligence or failure to wear the eyeglasses isn't what caused this injury so, therefore, she is not legally responsible.*

Reproduced Record, p. 606a (emphasis added).

In light of this jury charge, it is beyond question that the jury could reasonably have found that Dr. Nolan was negligent in some manner but that Mrs. James legally caused her own harm. The jury may well have found that Patricia James "jumped out too close in front of the oncoming car" when she took it upon herself to fix the apheresis machine rather than terminate the procedure or seek assistance, when she cleaned up the blood spill without gloves, and/or when she allowed the donor's blood to accumulate on her arms and hands for some forty-five minutes as she replaced the machine's tubing. Because these are all reasonable theories, we conclude that the verdict is supported by the record and is therefore, consistent with the law and the facts of this case.

■ The second issue presented by appellant is whether the trial court should have admitted the Pennsylvania Blood Bank statute into evidence. Appellant contends that the legislation and regulations are relevant to the issue of whether appellee Nolan's negligence was a substantial factor in causing Mrs. James' harm. It is argued that the jury may have been confused as to the relative roles played by Mrs. James as acting supervisor and appellee Nolan as blood bank director and that therefore, as a result of their "possible" confusion, they may have believed that it was Mrs. James' responsibility to postpone the apheresis procedure until the testing was completed. We conclude that this argument is without merit. This point was given detailed coverage in the trial court's

opinion, at pages 27–28, and we adopt the trial court's reasoning on this issue as our own. In addition, we note that the court's charge fully apprised the jury, over the objection of appellees, that appellee Nolan, who had approved the patient as a donor, owed a duty of care to Mrs. James because of her position as medical director of the blood bank. Therefore, the jury could not, as appellant suggests, have found the way they did on the basis that Mrs. James should have rescheduled the procedure herself.

 In considering the third issue, as to whether the trial court's jury instructions relating to proximate cause and substantial factor were adequate, we adhere to the following standard of review.

In reviewing a trial court's instruction to the jury, it is well settled that we must review the court's charge in it's entirety to determine whether any prejudicial error has been committed. *Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984). "A trial court is not required to accept the precise language of points for charge submitted by counsel so long as the issues are defined accurately and the applicable law is correctly reviewed." *Spearing v. Starcher,* 367 Pa.Super 22, 29, 532 A.2d 36, 40 (1987). *See also: Geyer v. Steinbronn,* 351 Pa.Super. 536, 554, 506 A.2d 901, 911 (1986); *Fish v. Gosnell,* 316 Pa.Super. 565, 580, 463 A.2d 1042, 1050 (1983). *Cooper v. Burns,* 376 Pa.Super. 276, 283, 545 A.2d 935, 938 (1988), *alloc. denied,* 522 Pa. 619, 563 A.2d 888 (1989). Appellant argues that the trial court failed to properly instruct the jury on the issue of proximate cause because it refused appellant's points for charge 9, 10, and 11. Points 9 and 10 relate to forseeability where the jury has found negligence *and* that the negligence was a substantial factor in bringing about harm. The jury did not find that appellee Nolan's negligence was a substantial factor in James' contraction of AIDS and therefore, even if it was trial court error to refuse the requested points, it was harmless inasmuch as appellants were not prejudiced by it. Further, the trial court's instructions did not suggest that forseeability was an additional

requirement for establishing a substantial factor, and therefore, it would have been confusing and unnecessary to instruct the jury on the immateriality of forseeability in a substantial factor analysis.

■ Point 11 of appellant's proposed jury instructions deals with various considerations which are important in deciding whether an actor's conduct is a substantial factor in bringing about another's harm. All these considerations were covered in the trial court's explanation of substantial factor in the context of various automobile accident examples. Reproduced Record, pages 597a–607a. As stated above, there is no precise language which must be used in charging the jury. We therefore conclude that the charge in the instant case correctly reviewed the applicable law.

■ And, finally, we turn to appellant's claim that the trial court erred in permitting testimony to the effect that Mrs. James' infection was caused by factors other than the failure of appellees to ascertain the results of the HIV testing prior to scheduling the apheresis procedure. Appellant offers no legal or evidentiary authority for this assertion, and our research of the record and the law reveals none. Consequently, in rejecting appellant's argument, we rely upon the trial court's reasoning as to this issue, as follows:

> [T]he initial issue in this case was whether Ms. James became infected with the AIDS virus as a result of the December 4, 1986 blood exposure. Consequently, testimony as to how the December 4, 1986 blood spill could have caused the infection was relevant. Also, Ms. James' activities throughout the apheresis procedure were relevant to the issue of whether Ms. James was comparatively negligent.

Trial Court Opinion, p. 26. The trial court did not abuse its discretion in permitting the challenged testimony.

In short, appellant's first two arguments, although earnestly presented, are based on mere speculation as to what the jury might have thought or what they could have found. Despite the tragic nature of this case, we cannot invade the province of

the jury absent definitive proof that the verdict was without a reasonable basis in fact. The rest of appellant's arguments speculate as to the possible effect the trial court's exercise of discretion might have had on the jury in admitting certain testimony and in charging the jury. Again, absent substantive evidence that an abuse of discretion or error of law was made during the trial, we cannot invade the discretionary province of the trial court.

Accordingly, the trial court's denial of appellant's request for a new trial and the judgment entered upon the jury's verdict are affirmed.

Judgment affirmed.