## Bernardo v. Alert Stamping & Manufacturing Co. Inc.

C.P. of Berks County, no. 719-92 A.D.

*Mark J. Connor,* for appellants.
*Steven D. Costello,* for appellees.

STALLONE, *J.,* August 8, 1996—This is a *products liability action* involving a subrogation claim arising out of a February 17, 1990 fire in the garage and home of the appellants, Fred Bernardo and Polly Bernardo,[1]

---

1. Great American Insurance Company is the plaintiffs' insurance carrier and is the real party in interest in this action. Pa.R.C.P. 2002(d).

at 7 Shady Hollow Lane, Shillington, Pennsylvania. The fire started when a utility worklight which Mr. Bernardo purchased from appellee, Sears, Roebuck & Company, ignited and exploded. The explosion occurred when gasoline from the carburetor of a vehicle, which a friend of Mr. Bernardo's was repairing, dripped onto the worklight.

Following a trial, the jury rendered the following answers to question nos. 1 and 2 of the special interrogatories to the jury pursuant to which this court entered a verdict in favor of the appellees:

"Question no. 1: Was the utility worklight defective?

"Number of jurors answering—Yes 3

"Number of jurors answering—No 9

"If at least 10 of you answer 'Yes' to question no. 1, then you should go on to question no. 2.

"If at least 10 of you answer 'No' to question no. 1, the plaintiffs cannot recover, you should not answer any further questions and you should instead return to the courtroom.

"Question no. 2: Was the defect a substantial factor in causing the property damage and personal injuries, if any, to the plaintiffs, Fred Bernardo and Polly Bernardo?

"Number of jurors answering—Yes 0

"Number of jurors answering—No 12

"If at least the same 10 of you who answered 'Yes' to question 1 also answer 'Yes' to question 2, then you should go on to question no. 3.

"If at least the same 10 of you who answered 'Yes' to question no. 1 answer 'No' to question no. 2, the plaintiffs cannot recover, you should not answer any further questions and you should instead return to the courtroom."

The jury's response to question no. 1 constituted a three-fourths majority, rather than the five-sixths majority required by the Judicial Code, Title 42 Pa.C.S. §5104(b) (Supp. 1996). In answer to question no. 2, the jury unanimously found that the utility worklight was not a substantial factor in causing the fire. And because of the jury's response to question no. 1, this court, although having read the answers to these interrogatories immediately prior to their being read aloud in open court, did not ask the jury foreperson to read the jury's response to question no. 2.

The following is the exact colloquy of what occurred between the jury, this court and counsel for appellants at that time:

"THE FOREPERSON: Was the utility worklight defective? And you want me to give—

"THE COURT: Number of jurors answering yes.

"THE FOREPERSON: Three said yes, nine said no.

"THE COURT: All right. That's it. Is there any question at this point, counsel? The court will enter the verdict.

"MR. CONNOR: I just ask the jury be polled." (N.T., Trial, p. 326.)

As can be seen, counsel for appellants did not object to the jury's verdict nor did he have any questions whatsoever with regard to it but, instead, merely requested that the jury be polled. After the jury was polled, this court discharged the jury.

Appellants subsequently filed and argued a motion for post-trial relief pursuant to Pa.R.C.P. 227.1 which this court denied. This timely appeal followed.

Appellants present the following three issues for review:

(1) Whether this court erred in not instructing the jury to deliberate further when the jury's response to question no. 1 failed to meet the five-sixths majority requirement;

(2) Whether this court erred in "molding" the verdict based upon this "incomplete" verdict; and

(3) Whether this court erred in discharging the jury when the jury's response to question no. 2 was not read aloud in open court.

In rejecting each of these arguments, we look to *Picca v. Kriner,* 435 Pa. Super. 297, 645 A.2d 868 (1994), which was an action filed by appellant to recover damages for personal injuries arising out of an automobile accident. In that action, the appellee, Lester Kriner, conceded that he was negligent and his own medical opinion witness "candidly acknowledged" that the appellant had suffered injury in the accident.

In response to question no. 1 of the special interrogatory form in *Picca,* the jury found that the appellee was in fact negligent but, in response to question no. 2, found that his negligence was not a substantial factor in causing the appellant's injuries. After the jury read their answers to these two questions, the trial court asked the following: "Counsel, is there any reason why this verdict should not be recorded?" And, as in the action at bar, counsel for the appellant in *Picca* made no objection but simply asked that the jury be polled. He objected to the verdict for the first time in his post-trial motions because the law, as now structured in Pennsylvania, would say that the jury could not have found that *Picca* had suffered no injury at all from the accident in light of the acknowledgment of injury by the appellee's expert. Therefore, the trial court granted the motion for a new trial.

In vacating the trial court's order and holding that the appellant had waived this argument by failing to object to the verdict prior to the jury's discharge, the Superior Court in *Picca* reasoned that:

"The main purpose of the familiar waiver rule announced in *Dilliplaine, [v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974)], and recently interpreted by *Gray, supra,* is to avoid holding new trials through timely, specific objections which give the trial judge an opportunity to recognize errors and correct them. When a party seeks a new trial because the jury returned an inconsistent, irrational, incredible, or otherwise problematic verdict, *Dilliplaine* would logically require that the party point out the verdict problems to the trial judge before the jury is dismissed. That way the judge can explain to the jury why its verdict is problematic and that judgment cannot be entered upon it. The jury can then resume deliberations in light of the court's corrective instructions, and return an error-free verdict. This rule does not require us to invade the jury's sacred deliberation process or find out why the jury did what it did; the court need only explain that the verdict returned makes no sense for the specific reasons raised in counsel's objections, and ask the jury to reconsider its decision in light of its new instruction.

*"Gray* applied the *Dilliplaine* rule to the problem of inconsistent jury verdicts, but there is no reason why the rule would be limited to inconsistency problems. *The rule should apply whenever the jury returns a verdict which is objectionable for any reason.*[2] An en banc panel of this court recently recognized this logical consequence of the *Dilliplaine* rule in *Curran v. Greate*

---

2. All italicized language which appears in this memorandum opinion is purely for emphasis only.

*Bay Hotel and Casino,* 434 Pa. Super. 368, 643 A.2d 687 (1994) [alloc. denied. 652 A.2d 1323 (Pa. 1994)]. The panel held that *parties must not wait for post-trial motions to argue that the jury verdict is too flawed to sustain a judgment. Such arguments must be made before the court discharges the jury.* 'It is this failure to act before the jury was discharged that constitutes waiver. *Williams [aff'd sub nom. Gray], supra.* The purpose of requiring action is to enable the jury to correct an obvious mistake.' *Curran, [supra]* at 376, 643 A.2d at 691.

"The record in the present case shows that after the jury returned its verdict, *the trial court asked, 'Counsel, is there any reason why this verdict should not be re-corded?' . . . Defense counsel naturally offered no objection. Picca's counsel asked that the jury be polled, but made no objection until after the court dismissed the jury. . . .*

"Our en banc decision in *Curran* clearly controls the present case. *By failing to object to the verdict before the jury was dismissed, Picca has waived her right to move for a new trial because of the verdict's problems. Hence, we must reverse the trial court's order granting a new trial, and reinstate the jury's verdict in favor of Kriner." Id.* at 302-304, 645 A.2d at 871-72. (footnote omitted)

Appellants herein cite *Oblon v. Ludlow-Fourth Corp.,* 406 Pa. Super. 591, 595 A.2d 62 (1991), *appeal denied,* 533 Pa. 600, 617 A.2d 1274 (1992), as support for their argument that this court had no authority to "mold" the verdict because of the lack of a five-sixths majority. However, *Oblon* was not only decided three years prior to *Picca* but is distinguishable because *Picca* clearly states that the waiver rule applies "whenever the jury

returns a verdict which is objectionable *for any reason."* *Id.* at 303, 645 A.2d at 871.

Therefore, we conclude that the appellants must be deemed to have waived their arguments at trial by failing to object to the jury's response to question no. 1 prior to this court's discharge of the jury.

Furthermore, even assuming *arguendo* that appellants' arguments were not waived, they are rendered moot by virtue of the jury's unanimous negative response to question no. 2 relative to causation which, although not read aloud in open court, no one disputes was the jury's decision on that issue of fact.[3]

And so, for all of the foregoing reasons, we respectfully urge that our order denying appellants' motion for post-trial relief be affirmed and that the instant appeal be denied.

---

3. The questions and instructions on the form prepared by the trial judge contained a total of four questions for the jury to answer but, because of its response to question nos. 1 and 2, the jury did not have to answer question nos. 3 and 4. However, the completed document, in its entirety, was filed with the prothonotary prior to the jury being discharged and the verdict slip being entered.