**Berg v. Lindgren Chrysler-Plymouth Inc.**

*Benjamin J. Mayerson* and *Hy Mayerson,* for plaintiffs.

*Kenneth C. Myers,* for defendants Lindgren.

*Craig A. Cohen,* for defendant Nationwide.

*Brett A. Huckabee,* for additional defendant.

STALLONE, *J.,* April 7, 2005—This is an action for damages involving claims of fraud, civil conspiracy and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law,[1] arising out of the repair of body damage to a 1996 Jeep Grand Cherokee by defendants Lindgren Chrysler-Plymouth Inc. a/k/a Lindgren Chrysler Plymouth Mazda Inc. and Lindgren and Manske Inc. a/k/a Lindgren Chrysler Plymouth Mazda Inc. (Lindgren)[2] and by the additional defendant, K.C. Auto Body Inc.[3] At the time, the vehicle was being leased by the plaintiffs, Dan Berg and Sherry Berg, and was insured by defendant Nationwide Mutual Insurance Company.

Prior to the close of the evidence, and the submission of the case to the jury, this court directed the parties to prepare proposed special interrogatories for the jury to answer concerning each of the Bergs' claims. Nationwide prepared special interrogatories, which instructed the jury that it could find Nationwide and/or Lindgren

---

1. Title 73, 73 P.S. §201-2(xxi) (Supp. 2005).

2. Prior to trial, the plaintiffs agreed to withdraw claims for breach of contract, breach of warranty and negligence and agreed to bifurcate other claims of bad faith, punitive damages, attorney's fees and costs for hearing before this court at a later time, if necessary.

3. On September 7, 1999, defendant Nationwide Insurance Company joined K.C. Auto Body as an additional defendant solely for purposes of a claim for contribution.

liable either on any, all, or none of the claims, and circulated them to the other parties, who did not object to their submission to the jury by the court.

Thereafter, this court instructed the jury concerning the elements of common-law fraud, not only with respect to the underlying common-law fraud claim but also at the request of Nationwide, which was not objected to, a second time relative to the unfair trade practices and consumer protection claim.

And when it came to damages, we instructed the jury that the Bergs were seeking (in this part of the bifurcated trial) to recover their lease payments made during the repair period, along with the insurance premiums which they paid while the vehicle was not available for their use.

After deliberating for more than four hours, the jury found in favor of Lindgren and Nationwide on the common-law fraud and civil conspiracy claims, but against Lindgren and Nationwide on the unfair trade practices and consumer protection claim.

After the jury announced its verdicts, and before it was discharged, but returned to the deliberation room, counsel for Nationwide and Lindgren made oral motions for judgment n.o.v. on the basis that the jury's verdicts on the common-law fraud and unfair trade practices and consumer protection claims were "inconsistent," which we denied after articulating on the record our reasons for doing so.

Nationwide and Lindgren have now each filed a motion for post-trial relief, in which they are once again seeking the entry of judgment n.o.v. on the unfair trade

practices and consumer protection claim.[4] We are filing this opinion in disposition of these motions.

Initially, Nationwide and Lindgren contend that they are entitled to the entry of a judgment on the basis that the jury's verdicts were inconsistent because, in order for the jury to have found in favor of the Bergs on their unfair trade practices and consumer protection claim, the jury would have necessarily had to first find in favor of the Bergs on their common-law fraud claim. We strenuously disagree.

In deciding a motion for entry of judgment n.o.v., the reviewing court must keep in mind that it should only be entered in a clear case, with any doubt resolved in favor of the verdict winner. *Reading Radio Inc. v. Fink,* 833 A.2d 199 (Pa. Super. 2003); *City of New Castle v. Uzamere,* 829 A.2d 763 (Pa. Commw. 2003); *Education Resources Institute Inc. v. Cole,* 827 A.2d 493 (Pa. Super. 2003). Moreover, in Pennsylvania, there is a presumption of consistency with respect to a jury's findings which can be rebutted only by a showing that there is no reasonable theory to support the jury's verdict. *Giovanetti v. Johns-Manville Corporation,* 372 Pa. Super. 431, 440, 539 A.2d 871, 875 (1988); see also, *Curran v. Greate Bay Hotel and Casino,* 434 Pa. Super. 368, 372, 643 A.2d 687, 688 (1994); *Goldmas v. Acme Markets Inc.,* 393 Pa. Super. 245, 251, 574 A.2d 100, 103 (1990).

Therefore, strict form is not required to sustain a verdict; rather, all that is essential is that a jury's intention be clearly understood. *James v. Nolan,* 418 Pa. Super.

---

4. And not simply a new trial which is not before us.

425, 614 A.2d 709 (1992). As the *James* court noted at p. 435, 614 A.2d at 714-15 of its opinion:

"[W]e cannot become so enmeshed in language that we ignore the clear expression of a conscientious lay jury. The record demonstrates without question that they exerted every effort to perform their duties in accordance with the instructions given and to convey to the court and litigants with all the clarity they could summon the results of their deliberations. No more can be reasonably required [from] those not trained in the law. Nor can we discard their diligent effort because of an asserted lack of precision in legal expression [of a conscientious lay jury]."

In looking to section 201-2(4)(xxi) of the Unfair Trade Practices and Consumer Protection Law,[5] which serves as the legal basis for the Bergs' unfair trade practices and consumer protection claim, we see that the term "fraud" is used but not defined . . . but that an "unfair or deceptive act or practice" is defined as follows: *"engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."* [6]

Although the courts have interpreted this catch-all provision of the Unfair Trade Practices and Consumer Protection Law to require a finding of common-law fraud,[7] the statute goes much further to provide that the fraudu-

---

5. Title 73, 73 P.S. §201-2 (Supp. 2005).

6. All italicized language appearing in this opinion is for emphasis only.

7. See *Booze v. Allstate Insurance Co.,* 750 A.2d 877 (Pa. Super. 2000).

lent or deceptive conduct must create a likelihood of confusion or misunderstanding in the course of a consumer transaction, which the jury could have easily concluded is quite different in its application from a common-law fraud claim, which makes no mention whatsoever of its relationship to a consumer or business transaction and certainly does not require the creation of a likelihood of confusion or misunderstanding.

Simply put, the jury was presented with two separate and distinct claims of common-law fraud and a violation of the Unfair Trade Practices and Consumer Protection Law. Therefore, this court instructed the jury relative to both the common-law fraud and the Unfair Trade Practices and Consumer Protection Law claims as follows (N.T., trial, pp. 974-75):

"Okay, we will start off with fraud. This is fraud—the fraud claim as to defendant's, Nationwide Insurance Company and/or Lindgren Chrysler-Plymouth Inc. The law says that a person who makes a fraudulent misrepresentation of a material fact to another is responsible for all the harm resulting from that other person's reliance on the fraudulent misrepresentation.

"In order for parties in the position of Mr. and Mrs. Berg to recover for fraud against Nationwide and/or Lindgren, they must prove by clear and convincing evidence the following elements of the claim.

"The first element is that Nationwide and/or Lindgren made a misrepresentation to the Bergs. The second is that this misrepresentation was fraudulent. The third element is that the misrepresentation was of a material fact, and the fourth, that Nationwide and/or Lindgren intended that Mr. and Mrs. Berg rely on that fraudulent misrep-

resentation, and five, that Mr. and Mrs. Berg did justifiably rely on that fraudulent misrepresentation, and that Mr. and Mrs. Berg's reliance on that representation was a factual cause of the harm allegedly suffered by them.

"Now, let's go to the first element, misrepresentation. A misrepresentation is any certification by words or conduct which is not in accordance with the facts. Fraudulent—a misrepresentation is fraudulent when the person making the misrepresentation knows that it is untrue or does not believe it is true or is indifferent as to whether it is true or by reason of special circumstance has a duty to know whether it is true.

"As to the element of materiality, a fact is material if it is one which would be of importance to a reasonable person in determining a choice of action. A material fact need not be the sole or even a substantial factor in inducing or influencing a reasonable person's decision. A fact is material if the maker of the misrepresentation knows that the person to whom it is made is likely to regard it as important even though a reasonable person would not regard it as important.

"And then with regard to reliance and justifiable reliance, the law says that reliance means that a person would not have acted or failed to act as he or she did unless he or she considered the misrepresentation to be true.

"Now, the second claim of unfair trade practices, and this is as against the defendants, Nationwide Insurance Company and/or Lindgren Chrysler-Plymouth Inc., the general purpose of the Unfair Trade Practices and Consumer Protection Law is to protect the public from fraud and unfair or deceptive business practices.

*"This Act provides that it shall be unlawful for any person, be it a natural person or a corporation, to use any unfair or deceptive act or practices in the conduct of any trade or commercial transaction.* Now, as you know, Mr. and Mrs. Berg claim that Nationwide and/or Lindgren violated the statute by engaging in fraudulent or deceptive conduct that created a likelihood of confusion or misunderstanding.

*"It is your responsibility to determine whether or not Nationwide and/or Lindgren engaged in any unfair or deceptive act or practice. You must determine after carefully considering all of the evidence whether or not the conduct of Nationwide and/or Lindgren or Mr. and Mrs. Berg constituted an unfair or deceptive business practice that created a likelihood of confusion or misunderstanding."*

In applying the evidence to these two separate instructions given by this court, the jury could very well have determined, based on the evidence in the case, that it would be more appropriate to find that Nationwide and Lindgren engaged in fraudulent or deceptive conduct in a consumer or business transaction which created a likelihood or confusion or misunderstanding, rather than simply common-law fraud. And when we consider that the law requires a presumption of consistency, we believe that it was reasonable for this lay jury, after making a diligent effort, to have found Nationwide and Lindgren liable on the unfair trade practices and consumer protection claim, but not liable on the common-law fraud claim.

Moreover, it must be noted here that Nationwide did not include any wording within the special interrogatories document to the effect that only if the jury first found

Nationwide and/or Lindgren liable on the common-law fraud claim that it could then find them liable on the unfair trade practices and consumer protection claim. Accordingly, having found that there is a reasonable and understandable theory to support the jury's verdicts, we cannot agree that Nationwide and Lindgren should be entitled to take away the jury verdict in favor of the Bergs on the grounds of inconsistency.

However, even assuming arguendo that we were to find such an inconsistency, Nationwide and Lindgren have clearly waived[8] this argument inasmuch as, prior to the jury's discharge and while the jury was sequestered in a separate room waiting for further instructions, this court invited counsel for Nationwide and/or Lindgren to request that the jurors be brought back into the courtroom and either questioned as to how they arrived at these two verdicts or to otherwise correct any inconsistency which they alleged. They, of course, chose not to do so (N.T., oral colloquy following jury verdict, pp. 5-7):

*"The Court: . . . maybe we could bring the jury in here and you could question them as to how they arrived at the verdict, unfair trade practices, without a separate verdict with regard to fraud.*

"Mr. Myers: Your honor, *while Mr. Cohen ponders that,* I would simply state for the record we would join in the motion for, or we make a separate motion on behalf of, Lindgren for a judgment notwithstanding a verdict and I understand your ruling.

---

8. *City of Philadelphia, Police Department v. Gray,* 534 Pa. 467, 475, 633 A.2d 1090, 1094 (1993).

"The Court: The same applies in your situation as well. I think that the case for the court's interpretation is stronger in view of the fact that I repeated those elements of fraud under unfair trade practices and emphasized that those elements had to be in addition to those elements of just common-law fraud. I mean, we do not have unintelligent people here. The foreman of this jury is a very intelligent individual. He works for the *Reading Eagle/Times.* I still believe that he does, and I think that not only him but I think several of the jurors were very attentive.

"And I also want to note for the record, not that I have to at this particular point, but this jury gave serious consideration to this case. They were out for four hours. They didn't come back and ask one question, which is an indication to the court that the instructions and the arguments were clear on the subject.

"And the instructions that went to the jury, as you also know, went to the jury without any exception being taken by any of the attorneys. The verdict slip went out to the jury as prepared by counsel and as stipulated to.

"Anything further?

"Mr. Mayerson: No, your honor.

"*The Court: Anything further?*

"*Mr. Myers: No, your honor.*

"*Mr. Cohen: No, your honor.*"

As an afterthought, Nationwide now goes on to suggest for the first time in its supporting brief that this court should have brought the jurors back into the courtroom, sua sponte, provided them with additional instructions and directed them to engage in further deliberations. In

doing so, Nationwide relies upon the following footnote which appears in the court's opinion in *Curran v. Greate Bay Hotel and Casino,* 434 Pa. Super. 368, 376 n.2, 643 A.2d 687, 691 n.2 (1994) (emphasis added):

> "*We note that the trial court was apparently well aware of the problems presented in the jury's answers to the interrogatories.* Immediately after discharging the jury, the court asked counsel to offer their opinions interpreting the verdict. While we reiterate that the type of inconsistency which resulted in this case demonstrates the 'impracticability of interrogatories,' *Ferrick v. Senger, supra,* we caution trial courts not to discharge juries *where there are obvious problems with a jury verdict* which might be resolved with more instruction and further deliberations. Had such occurred in the instant case, the problems which necessitated this appeal may well have been avoided."

In *Curran,* the jury found that one of the defendants, Greate Bay Hotel and Casino t/a Sands Hotel & Casino (the hotel), was negligent but that its negligence was not a substantial factor in causing the plaintiff's injuries. Nevertheless, the jury assigned 30 percent of the total causal negligence to the hotel, which was obviously inconsistent with its finding on causation.

However, we believe that *Curran* is clearly distinguishable in that, not only is it a footnote and certainly not the holding or dicta in the case, but that there is no such *obvious problem* or inconsistency in the jury's verdicts in the case before us. Furthermore, both Nationwide and Lindgren declined the opportunity to request this clarification from the jury or to ask the court to give additional instructions and/or direct further deliberations by the jury

as the court offered it would do. Had they done so, the issue could very well have been cleared up then and there; but, for reasons known only to them, such as, perhaps, strategy, they chose not to. Nor was there any suggestion by Nationwide or Lindgren, before the jury was discharged, that this court should have brought the jurors back into the courtroom, sua sponte. Therefore, they must now accept the consequences of choosing the strategy they did at the time of trial, as well as the rejection of this argument as being without merit.

Secondly, Nationwide challenges the jury's award of damages against it in the amount of $295, which it represents in their brief is the amount which the Bergs paid for automobile insurance premiums for five out of the six-month time period during which their vehicle was being repaired.[9] We disagree, since Nationwide has no factual basis for knowing how the jury calculated this amount of damages and, therefore, its argument is based only on its *assumption* as to how the jury arrived at that figure. As our Superior Court of Pennsylvania said in *Beswick v. Maguire*, 748 A.2d 701, 702 (Pa. Super. 2000):

"Since, under our system of jurisprudence, our courts in most cases have no way of knowing how or why a jury reached their verdict in a given case, the presence of passion, prejudice, partiality or corruption on the part of the jury, or whether they disregarded instructions, acted under misapprehension or mistake can only be a matter of surmise by a reviewing court."

Furthermore, Nationwide has waived any objection to the damage part of the award, as well, inasmuch as it did

_____

9. Lindgren has not joined in this argument. See N.T., argument on motions for post-trial relief, p. 21.

not place any objection on the record to the charge given by this court on damages[10] (N.T., trial, pp. 978-79; 1060).

For these reasons, we enter the following attached order.

## ORDER

And now, April 7, 2005, the defendants' motions for post-trial relief are hereby denied.

10. *Mazlo v. Kaufman,* 793 A.2d 968 (Pa. Super. 2002); Pa.R.C.P. 227.1(b)(1).