645 A.2d 868

Jennifer PICCA and Albert Picca, Appellees,

v.

**Lester KRINER, Appellant.**

Superior Court of Pennsylvania.

Argued June 21, 1994.

Filed Aug. 2, 1994.

Jordan D. Cunningham, Harrisburg, for appellees.

Before OLSZEWSKI, POPOVICH and JOHNSON, JJ.

OLSZEWSKI, Judge:

On August 12, 1987, Lester Kriner drove his car into Jennifer Picca's Subaru two-seater. Travelling 25–30 m.p.h., Kriner hit Picca from behind as she sat at a stop light. Picca's memory of the accident is limited, but she did experience neck and back pain, for which she has received extensive treatment over the years from her chiropractor and physician. Her medical bills were paid by her auto and health insurance carriers.

Picca sued Kriner in July of 1988. After some procedural delays, the matter was tried before a jury in 1993. The jury heard expert testimony from both parties; Kriner's medical expert candidly acknowledged that Picca had probably suffered some injury from the accident, but did not consider it significant. R. 315a. Rather, Kriner's expert thought that Picca's pain emanated from her pre-existing degenerative disc disease, which was unrelated to the accident. R. 297a.

Kriner conceded that he was at fault in the accident, and the trial court directed the jury to find him negligent. R. 253a. The jury did, but then found that Kriner's negligence was not a substantial factor in causing Picca's injuries. R. 275a–278a. Picca brought post-trial motions for judgment notwithstanding

the verdict or a new trial, and the trial court granted the latter. The court held that the jury verdict was so contrary to the evidence as to shock its conscience. Trial court opinion, 1/13/94 at 5. The trial court acknowledged that courts should be loath to substitute their judgment for a jury's, but held that it could not believe that Picca created her complaints, and that the jury's verdict was incredible for so implying. *Id.* at 6–7.

## I.

Our standard for reviewing a trial court's decision to grant a new trial was recently re-articulated by our high court in *Coker v. S.M. Flickinger Co., Inc.,* 533 Pa. 441, 625 A.2d 1181 (1993). Our scope of review is limited to those reasons upon which the trial court relied. We consider whether any of the trial court's reasons for granting a new trial have merit; if so, we defer to the trial court's decision. Because the trial court is uniquely qualified to evaluate factual matters, we will not disturb its decision absent an abuse of discretion or error of law. *Id.*

The trial court's reason for granting a new trial was that the jury could not have reasonably concluded that Picca suffered no injuries from the accident, and therefore should have found that Kriner's negligence was a substantial factor in bringing about Picca's harm. The evidence concerning Picca's injuries was certainly conflicting. Picca alleged that she suffered a litany of extensive injuries. *See* complaint, R. 8a–9a; appellant's brief at 3–4. Kriner's medical expert opined that the accident did not cause the bulk of these injuries; it caused at most a soft tissue strain in Picca's neck and back which should have healed in four to six months. R. 295a–296a. The jury was entitled to believe Picca's representations or reject them in favor of Kriner's etiology.

Both parties agreed, however, that Picca did not walk away from the accident entirely unscathed. Even Kriner's medical expert acknowledged that Picca suffered some injury from the accident, albeit only a minor ligament and muscle strain. R. 306a, 315a. It therefore follows that no reasonable

jury could have found that all of Picca's injuries were unrelated to the accident. The jury might have reasonably concluded that most of Picca's problems were pre-existing, and might have awarded low or even nominal damages had the accident caused only minor injury.[1]

## II.

We would therefore agree with the trial court that a verdict which found Kriner to have caused Picca no injury at all would be incredible. If this were the jury's actual verdict, as the trial court indicates, then the grant of a new trial would clearly be meritorious, and we would not hesitate to affirm the order. But it is not certain that the jury made this finding. The jury answered "no" to the second interrogatory, which read, "Was the defendant's negligence a substantial factor in bringing about the plaintiff's harm?" R. 253a. The most logical referent to the phrase "the plaintiff's harm," is **all** of the injuries which Picca alleged to have been caused by the accident, and which she sought to prove at trial.[2]

Kriner's defense strategy was to candidly admit his negligence, and even acknowledge that Picca suffered some minor injury from the accident; Kriner contested that he caused most of the injuries that Picca claimed at trial. The trial court indeed noted that the real disagreement between the medical experts was over what portion of Picca's injuries pre-existed

1. Our Supreme Court has noted how "too loud a cry of pain, on small occasion, may dilute belief even in the occasion itself. Jurors may perceive interests beyond momentary pain: interests of opportunity that to the jurors' minds become oppressive even for an obvious tortfeasor." *Boggavarapu v. Ponist*, 518 Pa. 162, 168, 542 A.2d 516, 518 (1988).

2. In instructing the jury on the second interrogatory, the trial court did not focus the broad term "plaintiff's harm" to that harm caused by the accident. Rather, the court instructed:

Mrs. Picca claims that she was injured and sustained damages as a result of this accident and you heard testimony in that regard. But the plaintiff in this case as in all negligence cases has the burden of proving to you that **each of her injuries that she's claiming** was caused by this particular accident by this particular defendant.
R. 254a. (emphasis added).

the accident and how much harm Kriner caused. Trial court opinion, 1/13/94 at 5. The jury had to find that Kriner caused some injury, but the jury may have concluded that Kriner's contribution to Picca's litany of ailments was trivial. In other words, Kriner may have caused some injury, but may not have been a substantial factor in bringing about **all** of Picca's harm. Thus, the jury's answer to the second interrogatory is not necessarily incredible, but could be entirely reasonable.

An unexpected answer to a similar verdict interrogatory caused problems in *Williams v. Southeastern Pennsylvania Transportation Authority*, 133 Pa.Cmwlth. 55, 574 A.2d 1175 (1990), *aff'd sub nom., Philadelphia Police Dept. v. Gray*, 534 Pa. 467, 633 A.2d 1090 (1993). Williams was injured when a SEPTA trolley she was riding in collided with an unmarked police car. A jury found that SEPTA was 25% negligent in causing the accident, but that SEPTA's negligence was not a substantial factor in bringing about Williams' injuries. The Commonwealth Court denied Williams' motion for a new trial, holding that she should have objected to the wording of the interrogatories before they went to the jury. In affirming, our Supreme Court held that the interrogatories were well drafted,[3] but the jury answered them inconsistently by finding that SEPTA's negligence was not a substantial factor in causing Williams' injuries, even though it found SEPTA 25% negligent. Our high court ruled that Williams waived any right to a new trial by failing to object to the inconsistent verdict before the jury was dismissed. *Gray, supra* at 477–78, 633 A.2d at 1095 (citing *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974)).

Likewise, Picca might have objected to the overly broad wording of the second interrogatory in the present case, and

---

**3.** The analogous interrogatory in *Gray* asked: "[D]o you find that the defendant SEPTA driver's negligence was a substantial factor in the plaintiff's accident and **her injuries resulting from that accident?**" *Gray, supra* at 476, 633 A.2d at 1094 (emphasis added). By specifically asking the jury if defendant caused not all of plaintiff's claimed injuries, but those injuries resulting from the accident, this interrogatory avoided the precise problem of the present case.

reworded it to focus on the injuries actually caused by Kriner.[4] After the jury returned its verdict, Picca again could have objected so the court could determine whether the jury was incredibly finding that Kriner caused no injury at all, or whether the jury considered Kriner's contribution to Picca's ailments insubstantial.[5] If the latter were the case, the court could have then instructed the jury to find Kriner liable for so much of Picca's injuries as he actually caused, and avoided any need for a new trial. *See Dilliplaine, supra.*

But events did not so transpire, and on appeal we are left with an ambiguous record. We cannot tell whether the jury incredibly found that Picca suffered no injuries, or whether it found that Kriner's negligence did not cause enough of Picca's alleged injuries to make his negligence a substantial factor in bringing them about—a mistaken, albeit reasonable, interpretation of the second verdict interrogatory. It does not matter, however, because in either event, Picca waived her right to ask for a new trial by not objecting to the problems with the verdict **before** the jury was dismissed.

The main purpose of the familiar waiver rule announced in *Dilliplaine, supra,* and recently interpreted by *Gray, supra,* is to avoid holding new trials through timely, specific objections which give the trial judge an opportunity to recognize errors and correct them. When a party seeks a new trial because the jury returned an inconsistent, irrational, incredible, or otherwise problematic verdict, *Dilliplaine* would logically require that the party point out the verdict problems to the trial judge before the jury is dismissed. That way the judge can explain to the jury why its verdict is problematic and that judgment cannot be entered upon it. The jury can then resume deliberations in light of the court's corrective

---

4. The record shows that the attorneys did not actually examine the interrogatory sheet until after the court had charged the jury. R. 266a. Still, the court asked for any objections to the interrogatories before the jury retired to deliberate, and the parties said nothing about the second question. R. 267a–274a.

5. The parties contemplated and began to discuss post-trial motions, but no effort was made to point out the problem with the verdict before the jury was dismissed. R. 274a–282a.

instructions, and return an error-free verdict. This rule does not require us to invade the jury's sacred deliberation process or find out why the jury did what it did; the court need only explain that the verdict returned makes no sense for the specific reasons raised in counsel's objections, and ask the jury to reconsider its decision in light of its new instruction.

■ *Gray* applied the *Dilliplaine* rule to the problem of inconsistent jury verdicts, but there is no reason why the rule would be limited to inconsistency problems. The rule should apply whenever the jury returns a verdict which is objectionable for any reason. An *en banc* panel of this Court recently recognized this logical consequence of the *Dilliplaine* rule in *Curran v. Greate Bay Hotel and Casino,* 434 Pa.Super. 368, 643 A.2d 687 (1994) (petition for allowance of appeal filed at 504 E.Alloc.Dckt.1994). The panel held that parties must not wait for post-trial motions to argue that the jury verdict is too flawed to sustain a judgment. Such arguments must be made before the court discharges the jury. "It is this failure to act before the jury was discharged that constitutes waiver. *Williams* [*aff'd sub nom. Gray* ], *supra.* The purpose of requiring action is to enable the jury to correct an obvious mistake." *Curran,* 434 Pa.Super. at 376, 643 A.2d at 691.[6]

The record in the present case shows that after the jury returned its verdict, the trial court asked, "Counsel, is there any reason why this verdict should not be recorded?" R. 275a. Defense counsel naturally offered no objection. Picca's counsel asked that the jury be polled, but made no objection until after the court dismissed the jury. Then Picca's counsel announced his intention to file a motion for a new trial, because the jury could not possibly have found that Picca suffered no injury at all from the accident. R. 280a–281a. This is precisely what counsel should have done while the jury was still impaneled, so the court could have instructed the jury

6. The *Curran* court specifically cautioned "trial courts not to discharge juries where there are obvious problems with a jury verdict which might be resolved with more instructions and further deliberations. Had such occurred in the instant case, the problems which necessitated this appeal may well have been avoided." *Id.,* n. 2.

304

to find Kriner liable for so much injury as he actually caused, which even the defense conceded was something.

Our *en banc* decision in *Curran* clearly controls the present case. By failing to object to the verdict before the jury was dismissed, Picca has waived her right to move for a new trial because of the verdict's problems. Hence, we must reverse the trial court's order granting a new trial, and reinstate the jury's verdict in favor of Kriner.

The order granting a new trial is vacated, and judgment is to be entered in favor of appellant. Jurisdiction is relinquished.