**Kootsouradis v. Recio**

*Daniel Myshin,* for plaintiff.
*Thomas W. Smith,* for defendant.

LOUGHRAN, *J.,* February 8, 1996—The jury in the above captioned matter returned a verdict in favor of the defendant which required the plaintiff to file a post-trial motion for relief, requesting a new trial upon the basis that the verdict for the defendant was against the weight of the evidence. The defendant contends that the verdict was supported by the evidence and that the plaintiff waived any right to a new trial by failing to object to the verdict before the jury was dismissed.

It is the trial court that has the discretion to determine whether or not a new trial should be granted because a jury verdict is against the evidence or the weight of the evidence. *Brodhead v. Brentwood Ornamental Iron Company Inc.,* 435 Pa. 7, 255 A.2d 120 (1969). This discretion, however, is not absolute as it cannot be utilized capriciously or palpably abused. A trial judge cannot grant a new trial simply because he would have reached a different conclusion than the jury, but is under

136

a duty to grant a new trial when convinced that the verdict is against the clear weight of the evidence or that the judicial process has effected a serious injustice. Where the case is close and the evidence contradictory, the jury should be given a freer rein; but a new trial should be granted when and where the jury verdict is so opposed to the facts that the judicial conscience cannot let the result stand. *Austin v. Ridge,* 435 Pa. 1, 255 A.2d 123 (1969). A new trial is required when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. *Fillmore v. Hill,* 445 Pa. Super. 324, 665 A.2d 514 (1995).

The plaintiff testified that on October 19, 1991 at approximately 9:50 a.m., he was in the left lane of northbound traffic on Route 119 waiting for southbound traffic to clear before he entered South Grande Street where he was employed at the Westmoreland County Waste Energy Facility when his automobile was struck from the rear by the defendant's vehicle with such force his automobile was turned 180 degrees and ended up facing south in the passing lane of the southbound lanes. Plaintiff testified his steering wheel was bent and the seat support was broken. The exhibits of the automobile photographs showed the rear of the car was buckled and driven forward into the right rear tire. The uni-body was twisted causing the car to look "cocked" and the damage to the car exceeded the market value of the vehicle.

The plaintiff testified that he felt all right at the scene and stated the same to the state policeman, ambulance personnel and the defendant that morning. In fact, he worked that day and the following day when he started to feel his back getting tight for which he went to the Mon Valley Hospital Emergency Room at approximately 7:30 p.m., a matter of 32 hours after the collision.

Plaintiff was given some pills, x-rays were taken and he was given a cervical collar and told to see his family doctor. He telephoned Dr. Thomas Brockmeyer, an orthopedist, who saw the plaintiff on November 4, 1991 and prescribed physical therapy.

Dr. Thomas Brockmeyer testified on page 29 of the transcript of his video deposition that in his opinion the accident described to him by the plaintiff approximately two weeks prior to this first examination of November 4, 1991 was the cause of plaintiff's injuries he described to the jury.

Dr. Brockmeyer's overall prognosis of plaintiff's injuries, as set forth on pages 26 and 27 of the video deposition, was as follows:

"Well, cervical injury was a relatively severe cervical sprain with a left-sided nerve root impingement with left arm pain or radiculopathy. There was significant lumbar sprain which has continued to trouble him since."

Dr. Brockmeyer's prognosis of plaintiff's condition set forth on pages 30 and 31 of the video transcript was:

"My prognosis is that he has an increased risk of requiring further interaction on his cervical spine with the possibility of an anterior cervical diskectomy and fusion; which he discussed with Dr. Engle already. He has, from my point of view, an increased risk of recurrence of neck and back pain, in other words, chronic cervical and lumbar sprain. He has continued to have problems, by my records approximately one and a half years after his accident, significant symptoms that still require care. Therefore, he is at increased risk to continue to have exacerbations on just neck and back pain down the road."

The record shows that the defendant did not produce any evidence that the plaintiff was not injured in this collision or that the injury occurred at any other time or from some other cause.

In response to the fact that the plaintiff did not complain of any injury on the day of the collision, both parties' orthopedic experts testified it was not uncommon for an injured person not to complain of an injury on the day of the happening but to complain of injuries a day or two following. (See Dr. Brockmeyer's video transcript pp. 28 and 29. See Dr. Mitchell's video transcript p. 37.)

Dr. Brockmeyer testified (Video transcript p. 14):

"The left side of his cervical musculature was in spasm, and that is a pathognomic, which is to say it's a sign that unequivocally shows a significant cervical sprain."

He continued by saying one cannot mimic a cervical spasm. When you have that as a finding, it is a sign the left side of the neck was significantly traumatized and the muscles are in spasm. He felt the spasm on the plaintiff. He further testified plaintiff's lumbar spine had signs of a less severe sprain . . . spasm on both sides and a significant left radiculopathy—(root pain).

Dr. Brockmeyer stated he prescribed Medrol Dosepak, a powerful steroid medication which he uses on patients that have relatively severe findings and relatively significant pain. He also prescribed physical therapy which consisted of three treatments a week over a six month period and another period of three times a week for one month in 1993.

When questioned about the amount of physical therapy for this type of injury, Dr. Brockmeyer testified (Video transcript p. 30):

"He had a severe injury, so I don't think that the amount of physical therapy he had was out of proportion to the injury. No, I think it would be an expected amount of physical therapy."

When Dr. Brockmeyer noted a diminished sensation in the sixth cervical distribution in plaintiff's left hand, he referred plaintiff to Dr. David Engle, a neurosurgeon, who found that plaintiff's symptoms fit into the C6 dermatomal distribution. Dr. Engle also noted the bulging disk and a minimal compression of the thecal sac at the fifth and sixth cervical level.

Dr. William Mitchell, an orthopedist, testified for defendant on videotape and admitted on cross-examination that he examined plaintiff on June 29, 1994 and that his conclusions and testimony were as to plaintiff's condition on June 29, 1994.

There was no evidence presented that plaintiff was not injured in this collision or that he was injured somewhere else or at another time. Dr. Brockmeyer testified that the left side of his musculature was in spasm and that is pathognomic, which is to say it's a sign that unequivocally shows a significant cervical sprain. He further testified there was decreased right lateral motion, diminished range of motion in bending and straightening of the neck and all consistent with that injury. He further testified his lower back, lumbar spine, had signs of a less severe sprain, spasm on both sides consistent with the history of the seat back being broken.

These findings of cervical and lumbar sprain were felt by Dr. Brockmeyer. His diagnosis of significant left radiculopathy (root pain) was confirmed by the pain radiating down the arm in a particular pattern into particular fingers which plaintiff was complaining about.

As further evidence of the severity of the injury, Dr. Brockmeyer testified he used a Medrol Dosepak on the plaintiff and this medication is used on patients that have relatively severe findings and relatively significant pain.

Because plaintiff had a definite sensory deficit, Dr. Brockmeyer recommended plaintiff take an MRI and see a neurosurgeon, Dr. David Engle. The MRI was objective evidence of a bulging disk at the fifth and sixth cervical level with minimal compression of the thecal sac.

The defendant in his pleadings and in his testimony on cross-examination admitted liability for the collision.

A jury's verdict must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by uncontroverted evidence at trial; and the jury can only reject any and all evidence to the point where the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic. *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995).

Given the admission of liability and the absence of testimony that the injuries were not caused at another time or were not the result of the collision, the jury verdict is contrary to the evidence and weight of the evidence. The total disregard of this evidence shocks the conscience of the court and a new trial should be awarded. In zero verdict cases new trials have been awarded even when the injuries were minor in nature. *Hevener v. Reilly,* 266 Pa. Super. 386, 404 A.2d 1343 (1979).

The defendant argues that a new trial should not be awarded because the plaintiff waived any right to a new trial by failing to object to the verdict before the jury was dismissed, citing *Picca v. Kriner,* 435 Pa. Super. 297, 645 A.2d 868 (1994), *alloc. denied,* 539

Pa. 653, 651 A.2d 540 (1994). However, our Commonwealth Court in *Cipolone v. Port Authority Transit System of Allegheny County,* 667 A.2d 474 (Pa. Commw. 1995), distinguished *Picca* and held that the *Picca* waiver does not apply in cases when weight of the evidence is the issue for new trial. As that is the issue here, defendant's reliance upon *Picca, supra* is not well taken.

Accordingly, a new trial in this case will be awarded and plaintiff's post-trial motion granted.

### ORDER

And now, to wit, February 8, 1996, after review and careful consideration of the within matter, it is hereby ordered, adjudged and decreed that the plaintiff's post-trial motion requesting a new trial is hereby granted and it appearing to the court that the jury's verdict in favor of the defendant is contrary to the evidence and weight of the evidence, a new trial is hereby ordered.