**Hogan v. Anderson**

C.P. of Bucks County, no. 93-0736-14-2.

*Sheldon A. Goodstadt,* for plaintiff.
*Dean P. Arthur,* for defendant.

LAWLER, *J.,* July 10, 1997—Plaintiff appeals the order of this court entered May 7, 1997, denying her motion for post-trial relief, following a verdict in favor of defendant. Specifically, plaintiff moved for a new trial.

This case results from a motor vehicle accident on March 4, 1991. Plaintiff's, Rose Hogan's, car was the first in a line of four cars involved in a chain reaction rear-end collision. It was the last car to be rear-ended. At the time of the accident, all of the cars with the exception of defendant's were stopped at a stoplight waiting for it to change. N.T. 11/15/96 at 28, 78. The chain reaction began when defendant, Gloria Jean Anderson, traveling between 10 to 15 miles per hour, rear-ended the car in front of her, which was driven by Henry Rigley. *Id.* at 27. Rigley's car in turn rear-ended a car driven by Kathy Sheldon, which in turn rear-ended plaintiff's, Rose Hogan's, car.

The impact to plaintiff's car was light. N.T. 11/15/96 at 25. There was no damage to either plaintiff's car or the car which directly hit hers. *Id.* at 23-24 and 76. Plaintiff's car did not move as a result of the impact. *Id.* at 77. Kathy Sheldon, the driver of the car which rear-ended plaintiff, was not injured. *Id.* at 19 and 22. The impact merely made her body move forward then back. *Id.* Ms. Sheldon remained at the scene of the accident for 30 minutes, during which time she did not hear plaintiff complain about any injuries. *Id.* at 24-25. Of the four drivers involved in the accident, plaintiff was the only person injured. *Id.* at 31.

As a result of the accident, plaintiff claimed to have injured her knees, head, neck and shoulders, as well as sustaining bruises to her left arm. *Id.* at 40 and 44. She also claimed that the accident caused a herniated disc and nerve injury, which was observed on an MRI taken on June 6, 1991. N.T. 11/19/96.

Plaintiff had been injured in two previous accidents. The first was in 1982, when she fell at a supermarket, injuring her left ankle and her back. As a result of the supermarket accident, she also sustained a torn ligament in her left hand and neck pain. N.T. 11/15/96 at 36, 38 and 62-63. The second was a 1985 motor vehicle accident, in which she injured her knees and sustained back, neck and cervical pain. *Id.* at 36 and 67. She was also involved in two subsequent accidents which she alleged aggravated her injuries from the instant car accident: a February 3, 1992 accident and a July 1, 1992 motor vehicle accident. *Id.* at 51, 55, 56, 58, 90, 93. She was also involved in a November 30, 1990 motor vehicle accident and a June 7, 1991 motor vehicle accident for which she claimed no injuries. Prior to the accident at issue, plaintiff had a tear in her meniscus. *Id.* at 97. She also had experienced wrist pain in 1990 (N.T. 11/18/96 at 28) and had been diagnosed in 1987 as having "chronic degeneration of cervical spondylolysis" in her neck. N.T. 11/18/96 at 27.

At trial, defendant admitted her negligence in causing the accident. N.T. 11/19/96 at 4. The only issue for the jury's determination was whether defendant's negligence was a substantial factor in causing plaintiff's injuries.

Although plaintiff's concise statement of matters complained of on appeal cites eight grounds of error,

those grounds can be summarized as three separate claimed errors. We discuss each claimed error below.

## A. IT WAS NOT ERROR TO PERMIT DEFENDANT TO PLAY THE VIDEOTAPE OF PLAINTIFF'S EXPERT WHEN PLAINTIFF CHOSE NOT TO CALL HER

At points one and two of her 1925(b) statement, plaintiff complains of the following:

"(1) The court erred in permitting the videotape testimony of plaintiff's expert witness, Elizabeth Strathie M.D., to be used by defense counsel when plaintiff elected not to use this witness. Under *Pascone v. Thomas Jefferson University,* 357 Pa. Super. 524, 516 A.2d 384 (1986) and *Smith v. Barker and National Construction Company,* 368 Pa. Super. 472, 534 A.2d 533 (1987), it is clear that the plaintiff was not required to present said expert testimony and it was prejudicial error for the defendant to be permitted to do so over the objection of plaintiff's counsel at trial.

"(2) The court erred in permitting the videotape testimony of plaintiff's expert witness, Elizabeth Strathie M.D., to be used by defense counsel in that he was permitted to ask leading questions of his own witness in contravention of *Pascone* and *Smith.* This was prejudicial error for the defendant to be permitted to do so over the objection of plaintiff's counsel at trial."

A video deposition of a medical expert may be used at trial "for any purpose whether or not the witness is available." Pa.R.C.P. 4020(a)(5) and 4017.1(g). Rule 4020(a) permits the use of such video depositions at trial "so far as admissible under the rules of evidence." *Pascone v. Thomas Jefferson University,* 357 Pa. Super. 524, 529, 516 A.2d 384, 387 (1986), *alloc. denied,*

517 Pa. 320, 536 A.2d 338 (1988). In other words, Rules 4020 and 4017.1 do not alter the rules regarding admissibility of evidence. Thus, if the portion of the videotaped testimony sought to be introduced would be inadmissible under the rules of evidence, then the trial court is correct in refusing its admission.

Thus, in *Pascone,* the Superior Court affirmed a trial court's refusal to allow plaintiffs to introduce into evidence portions of a videotaped deposition of a defense medical expert whom the defense did not call to testify at trial, because the portions were not admissible under the rules of evidence. In that case, because the direct examination of the expert was not helpful to plaintiffs' case, plaintiffs had sought to offer only their cross-examination of the expert. *Id.* at 528 n.2, 516 A.2d at 386 n.2. The trial court found the cross-examination inadmissible under the rules of evidence because it was premised upon hypothetical facts not proved at trial and had been elicited by leading and suggestive questions.

To avoid the problem presented in *Pascone,* in the instant case, this court required that the entire deposition, *i.e.,* both plaintiff's direct examination and defendant's cross-examination be admitted.[1] We also instructed the jury as to why the plaintiff was asking the questions. See N.T. 11/18/96 at 11. Because this court admitted the entire testimony (*i.e.,* both the direct and cross-examination of the witness) the problems encountered in *Pascone* with respect to leading, suggestive and hypothetical questions were not implicated.

---

1. We also required that defendant pay one-half the cost of the deposition and the entire cost of showing it to the jury. N.T. 11/18/96 at 8.

Plaintiff argues that the admission of her direct examination of Dr. Strathie was contrary to *Smith v. Barker,* 368 Pa. Super. 472, 534 A.2d 533 (1987), *alloc. denied,* 520 Pa. 577, 549 A.2d 137 (1988). In *Smith,* the plaintiff introduced the videotaped deposition of his medical expert regarding his damages. The trial court simply allowed defendants to withhold their cross-examination of plaintiff's expert, the effect of which was to permit the direct testimony of plaintiff's expert to remain uncontroverted.[2] Those facts are clearly different from those of the instant case.

Discovery was designed to make trials "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986-87, 2 L.Ed.2d 1077, 1082 (1958). The purposes underlying discovery are to avoid surprise and the possible miscarriage of justice, as well as to eliminate the "sporting theory of justice." *Brown Badgett Inc. v. Jennings,* 842 F.2d 899, 902 (6th Cir. 1988). In the instant case, it was made clear at Dr. Strathie's deposition that the deposition was intended to be used at trial. Additionally, plaintiff in her pretrial memorandum listed Dr. Strathie as a witness. In reliance thereof, defendant reasonably expected that Dr. Strathie's video deposition would be introduced at trial. Thus, in the interests of fair trial, eliminating surprises and achieving justice during the trial, we permitted defendant to introduce the complete deposition of Dr. Strathie.

---

2. Also, in *Smith,* the trial court allowed the defendant not to present its video depositions of two doctors. However, since the appellate court did not set forth its reasons for affirming the trial court on those depositions, the decision is unhelpful to plaintiff.

Finally, in the instant case, plaintiff cannot argue that defendant's introduction of the videotaped deposition forced Dr. Strathie to testify against her will. Where, as here, the deposition record discloses that the taking of the deposition was for use at trial (as opposed to a mere discovery deposition), all or part of the witness' testimony may be used at trial. See *Pascone, supra.*

Accordingly, no error occurred as a result of the admission of the videotaped deposition.

## B. NO ERROR WAS COMMITTED WITH RESPECT TO THE DEFENSE THEORY THAT PLAINTIFF'S HERNIATED DISC RESULTED FROM DEGENERATIVE CHANGES

At points three and four of her 1925(b) statement, plaintiff complains of the following:

"(3) The court erred in permitting defense counsel to argue in his closing argument that the plaintiff's herniated disc was the result of degenerative changes without offering medical proof of causation. This was prejudicial error for the defendant to be permitted to do so over the objection of plaintiff's counsel at trial.

"(4) The court erred in permitted [sic] the questioning by defense counsel of Dr. Strathie regarding her opinion that a degenerative condition could become a herniated disc. This opinion was not rendered within a reasonable degree of medical certainty nor was the opinion specifically rendered to apply to plaintiff's herniated disc at the C5-6 level as opposed to herniated discs in general. This was prejudicial error for the defendant to be permitted to do so over the objection of plaintiff's counsel at trial."

Trial counsel are afforded great latitude in closing arguments so long as they do not present facts not in evidence. *Millen v. Miller,* 224 Pa. Super. 569, 572, 308 A.2d 115, 117 (1973). "So long as no liberties are taken with the evidence, a lawyer is free to draw such inferences as he wishes from the testimony and to present his case in the light most suited to advance his cause and to win a verdict in the jury box." *Contractors Lumber and Supply Co. v. Quinette,* 386 Pa. 517, 522, 126 A.2d 442, 444 (1956).

Plaintiff claims that it was error to allow defense counsel to argue in his closing argument that the plaintiff's herniated disc was the result of degenerative changes without offering medical proof of causation. However, the requirement that an expert physician's opinion must be rendered to a reasonable degree of medical certainty applies only to the plaintiff's case, *i.e.,* to medical testimony a plaintiff "offers as proof of a necessary fact in support of recovery." *Neal by Neal v. Lu,* 365 Pa. Super. 464, 477, 530 A.2d 103, 110 (1987). Although it may have been rendered with less than a reasonable degree of medical certainty, a physician's expert opinion on causation is admissible when it is offered to rebut or discredit plaintiff's case. See *id.* Indeed, the Superior Court has stated that such testimony "affords an effective means of rebutting contrary opinion evidence." See *id.*

In the instant case, defendant was not attempting to *prove* for the purpose of recovery that plaintiff's herniated disc was caused by degeneration. Rather, defendant offered the testimony to show that degeneration could not be ruled out as a cause of plaintiff's injury. In other words, defendant offered the testimony to rebut

the expert opinion of Dr. Gaul that plaintiff's injuries were caused by the accident in question. Accordingly, Dr. Strathie's opinion did not have to meet the reasonable degree of medical certainty standard.

Additionally, Dr. Gaul testified that plaintiff had a preexisting degeneration of the cervical spine. He further testified that, although it was not typical and not within his experience, a degenerative condition can result in herniation. Thus, this court did not err in permitting defendant to argue that plaintiff's herniated disc was not the result of the car accident at issue.

## C. THE VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE OR THE CHARGE OF THE COURT

At points five through eight of her 1925(b) statement, plaintiff claims the following errors:

"(5) The verdict was manifestly against the weight of the evidence in that defendant offered no medical proof that plaintiff's injuries were not sustained as a result of the motor vehicle accident of March 4, 1991 and yet the jury did not find that the said motor vehicle accident was a substantial factor in causing her injuries.

"(6) The verdict was against the charge of the court in that defendant offered no medical proof that plaintiff's injuries were not sustained as a result of the motor vehicle accident of March 4, 1991 and yet the jury did not find that the said motor vehicle accident was a substantial factor in causing her injuries.

"(7) The verdict was manifestly against the weight of the evidence in that the medical proof of causation consisting of the videotape testimony of Drs. Gaul and Strathie correlated and/or connected the injuries sustained by the plaintiff to the motor vehicle accident

of March 4, 1991 and yet the jury did not find that the said motor vehicle accident was a substantial factor in causing her injuries.

"(8) The verdict was against the charge of the court in that the medical proof of causation consisting of the videotape testimony of Drs. Gaul and Strathie correlated and/or connected the injuries sustained by the plaintiff to the motor vehicle accident of March 4, 1991 and yet the jury did not find that the said motor vehicle accident was a substantial factor in causing her injuries."

Plaintiff's argument is that defendant did not prove that plaintiff's injuries were not sustained as a result of the car accident and thus the jury had to find that the car accident was a "substantial factor" in causing her injuries. However, defendant was not required to prove that plaintiff's injuries were not sustained as a result of the car accident. See *Neal by Neal v. Lu,* *supra* at 474-75, 530 A.2d at 109 (defendant need not prove, with certainty or otherwise, that he or she is innocent of the alleged wrongdoing). Rather, at all times the plaintiff maintained the burden of proving that her injuries were caused by the accident.

In weighing the evidence, the jury is free to believe all, part of, or none of the testimony of any witness. Any inconsistencies in the testimony are for the jury to reconcile. *Weidemoyer v. Swartz,* 407 Pa. 282, 285, 180 A.2d 19, 21 (1962). In the instant case, it was far from clear what caused plaintiff's injuries. The jury chose not to believe plaintiff's testimony that her injuries were substantially caused by this car accident.

This court may grant a new trial only when the verdict is so contrary to the evidence that it shocks one's sense of justice. *McDole v. Bell Telephone Co. of Pennsylvania,* 441 Pa. Super. 88, 93, 656 A.2d 933, 935 (1995). The evidence must be such that no two reasonable minds

could differ that the outcome should have been rendered in the movant's favor. *Id.* and *Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992). In the instant case, the verdict did not shock one's sense of justice. Nor was it against the weight of the evidence. The evidence was not such that no two reasonable minds could differ that the outcome should have been in plaintiff's favor. Indeed, the evidence supported the jury's verdict.

To succeed on her claim that the verdict was against the weight of the evidence, the medical evidence of plaintiff's injury must be unrebutted. *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995). In the instant case, the medical evidence was rebutted. Plaintiff had been involved in six other accidents between 1982 and 1992. In 1987, she had been diagnosed as having "chronic degeneration of cervical spondylolysis" in her neck. N.T. 11/18/96 at 27. The jury could have concluded that plaintiff's herniated disc was the result of a degenerative condition or caused by one or more of the other accidents. Likewise, the jury could have concluded that plaintiff did not prove that her other alleged injuries could not have been caused by any of her other accidents.

Plaintiff might also argue that the jury was confused by question number two on the verdict slip. In *Picca v. Kriner,* 435 Pa. Super. 297, 645 A.2d 868 (1994), the court recognized the possibility of jury confusion by such a question. That court explained that a jury could correctly and reasonably answer that question "no" if it believed that the defendant caused some, but not all, of plaintiff's harm. The court explained, that, to avoid such a problem, the plaintiff must object to the broad wording of the question and reword it to focus on the injuries actually caused by the defendant. The court also held that any claim of an inconsistent

verdict is waived unless objected to prior to the jury's discharge. *Id.* at 304, 645 A.2d at 871. In the instant case, plaintiff did not object prior to the jury's discharge. Thus, plaintiff has waived any claim she might have had of an inconsistent verdict.

For the foregoing reasons, we denied plaintiff's post-trial motion and entered judgment upon the verdict of the jury.