**Greenwood v. Mangini**

530

*Robert A. Gelinas,* for plaintiffs.
*Scott A. Portner,* for defendants.

TUCKER, *J.,* November 22, 2010—

## I. Facts and Procedural History

This premise liability matter came before this court by jury trial on August 9, 2010. On August 12, 2010, the jury found in favor of plaintiffs and against defendants

Frank Mangini, Dorothy Boyle, and Daniel Mangini in the amount of $27,279.00 to be reduced by 40% as a result of plaintiff Kristina Greenwood's comparative negligence after sustaining injuries from falling on the defendants' sidewalk. N.T. Trial (8/12/2010) at 102-105. Plaintiffs' counsel polled the jury and ten (10) of the twelve (12) jurors agreed with the verdict. *Id.* at 105. Plaintiffs' counsel then stated that the verdict may be recorded; the court recorded the verdict and the jury was discharged. *Id.* at 107.

On August 20, 2010, plaintiffs filed post-trial motions alleging the two (2) identical issues raised below in this appeal. This court scheduled a rule to show cause hearing concerning alleged jury misconduct and weight of the evidence and denied the post-trial motion at the conclusion of the hearing on September 2, 2010. Plaintiffs then filed a notice of appeal on September 22, 2010. The court ordered plaintiffs to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) ("1925(b) Statement"). On October 13, 2010, plaintiffs timely filed a 1925(b) statement wherein alleging:

1.   the trial judge erred and abused his discretion by refusing to schedule an evidentiary hearing when, after the jury rendered its verdict and the jury was dismissed, Juror Number One told plaintiffs that while she was in the hallway, other jurors "continued to deliberate" without her and "decided two or three issues" on the verdict sheet; and

2.   the verdict against the weight of the evidence when the jury disregarded the uncontroverted evidence that plaintiffs' recoverable medical expenses totaled $19,360.70 and only awarded plaintiffs the sum of $8,500.00 for medical expenses.

532

## II. Legal Analysis

a.  *This court did not schedule an evidentiary hearing concerning juror number one's alleged statement because jurors are incompetent to testify as to what occurred among the jurors during deliberations.*

It is well settled that jurors shall not be called to testify regarding their deliberations. *Pratt v. St. Christopher's Hospital*, 581 Pa. 524, 528, 866 A.2d 313, 315 (2004). Jurors are in fact incompetent to testify regarding their deliberations in this Commonwealth. See Pa.R.Evid. 606(b).

Pennsylvania follows the majority rule in providing an evidentiary prohibition against the admissibility of testimony of a discharged juror as to what occurred among the jurors during deliberations. *Pratt v. St. Christopher's Hospital*, 581 Pa. at 528. This is called the "no-impeachment rule" and precludes jurors from testifying about all mental processes connected with deliberations. *Id.* The "no impeachment rule" is buttressed by an overall concern with protecting the integrity of the process; the desire to avoid harassment of discharged jurors by disappointed parties; the strategy of insulating private deliberations of jurors from public scrutiny in order to facilitate their open and frank discussions; and *a practice of preventing minority or equivocating jurors from subsequently impugning verdicts. Id.* at 536 (emphasis added). Furthermore, this rule has been codified in Pennsylvania Rule of Evidence 606(b), which states:

(b) *Inquiry into validity of verdict.* Upon an inquiry into the validity of a verdict, including a sentencing verdict pursuant to 42 Pa.C.S.A. § 9711 (relating to capital

sentencing proceedings), a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotion in reaching a decision upon the verdict or concerning the juror's mental processes in connection therewith, and a juror's affidavit or evidence of any statement by the juror about any of these subjects may not be received. However, a juror may testify concerning whether prejudicial facts not of record, and beyond common knowledge and experience, were improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Therefore, under the "no impeachment" rule, jurors are incompetent to testify to the substance and manner of the deliberations and are not permitted to impeach a verdict rendered.

The narrow exception to this rule allows jurors to testify about extraneous influences which might have influenced deliberations such as impermissible outside evidence or contact with outside sources. *Pittsburgh Nat'l Bank v. Mutual Life Ins. Co. of NY*, 493 Pa. 96, 100, 425 A.2d 383, 385 (1981). In this case, the narrow exception does not apply. The allegations of improper juror deliberations refer only to the alleged manner and content of the jurors' deliberations: that the jury allegedly continued deliberating, at some point, without the presence of juror number one. After the trial concluded, juror number one approached plaintiffs' and plaintiffs' counsel outside the courthouse. N.T. Motion (9/2/2010) at 6. At this time she allegedly told plaintiffs and plaintiffs' counsel that she felt there was some type of impropriety in deliberation because the majority of the jurors had decided two or three issues

while she was out of the room. *Id.* at 7. At no time did juror number one allege that there were any extraneous influences on the jury. The "no impeachment" rule precludes jurors from offering testimony to the manner of their deliberations after the jury has been discharged. The entire jury deliberated for approximately five (5) hours after a three (3) day trial. At the end of deliberations, ten (10) of the twelve (12) jurors agreed on the verdict and after being polled, no juror expressed any alleged misconduct, including juror number one. N.T. Trial (8/12/2010) at 106. Pa. R. Evid. 606(b) is explicit. Clearly, this court cannot elicit incompetent testimony from jurors concerning the manner of their deliberations. Therefore, plaintiffs' request for an evidentiary hearing was properly denied simply because there is no possible competent testimony that can be presented regarding the alleged misconduct.

Plaintiffs' position is that if one juror was outside the jury room during deliberations the plaintiffs' right to a jury of twelve (12) have been violated because the absence of any one vote invalidates the jury's verdict. N.T. Motion (9/2/2010) at 34. Plaintiff also contends that if one juror leaves the room, the jury is not deliberating and therefore the jurors can be questioned as to what happened when the juror left the room. *Id.* Furthermore, plaintiffs' argue that the court can pose specific questions to the jurors without asking about what occurred during deliberations. *Id.* This court disagrees. Under these circumstances, it is impossible to receive testimony from any juror without delving into the occurrences in the deliberation room and violating the "no-impeachment" rule. Once jurors are subpoenaed and questioned as to the manner of their deliberations, the veil of sanctity that protects our American jurisprudence will be pierced. Even if plaintiffs'

position is correct, the court cannot test the veracity and credibility of any juror's testimony without cross-examining the remaining jurors regarding the alleged conduct during deliberation. Furthermore, assuming these allegations are true, juror number one cannot testify as to what issues were decided in her absence without testifying as to how, upon returning to the jury room, she discovered they were already decided. Such an inquiry is clearly protected by the sanctity of the juror room and Pa.R.Evid. 606(b). Jurors are forbidden from testifying about deliberations to protect the integrity of the process and prevent this exact situation here: *minority or equivocating jurors impugning verdicts. See Pratt*, 581 Pa. at 528. The trial record reflects that juror number one disagreed with the verdict. N.T. Trial (8/12/2010) at 106. The court cannot now allow this self-interested testimony to impugn the verdict and require the unwarranted expenditure of judicial resources. Therefore, this court has no choice but to deny plaintiffs' request for an evidentiary hearing regarding the deliberations of the jury.

b. *Plaintiffs' weight of the evidence claim to medical expense damages is waived because plaintiffs failed to object when verdict was recorded.*

In *Dilliplaine v. Lehigh Valley Trust Co.*, 475 Pa. 255, 259, 322 A.2d 114, 117, the Pennsylvania Supreme Court set forth the doctrine of waiver and the underlying policy considerations which are:

First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to

reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.

Pennsylvania courts have extended the waiver rule to include cases involving inconsistent verdicts. In *Picca v. Kriner*, 645 A.2d 868 (Pa. Super. 1994). the Pennsylvania Superior Court applied the waiver rule when a party failed to object to a jury verdict that was obviously inconsistent. In *Picca*, as here, the appellant waited until after the trial court dismissed the jury to raise an objection. *Id.* at 871. Since the trial court could no longer re-instruct the jury in order to clarify the verdict, a new trial would have been required. *Id.* Therefore, the Superior Court found the right to ask for a new trial was waived because the appellant failed to timely object when the problem could have been easily corrected. *Id.* As the Pennsylvania Superior Court explained:

The main purpose of the familiar waiver rule announced in *Dilliplaine* and interpreted by *Gray*, is to avoid holding new trials through timely, specific objections which give the trial judge an opportunity to recognize errors and correct them. When a party seeks a new trial because the jury returned an inconsistent, irrational, incredible, or otherwise problematic verdict,

*Dilliplaine* would logically require that the party point out the verdict problems to the trial judge before the jury is dismissed. That way the judge can explain to the jury why its verdict is problematic and that judgment cannot be entered upon it. The jury can then resume deliberations in light of the court's instructions, and return an error-free verdict. *Picca.* 645 A.2d at 871.

In the instant case, the evidence concerning medical expenses was uncontroverted and the court instructed the jury: "plaintiff is entitled to be compensated in the amount of all medical expenses reasonably incurred... amount[ing] to $19,360.70." N.T.Trial (8/12/2010) at 48. The jury returned its verdict specifically awarding $8,500 for economic loss. *Id.* at 104. Immediately after the verdict, the court explicitly asked: "Is there any reason why this verdict should not be recorded?" and plaintiffs' counsel requested that the jury be polled. *Id.* at 105. The court polled the jury. *Id.* After the jury was polled and counsel had the opportunity to reflect on the verdict, the court again asked if there is any reason why the verdict should not be recorded. *Id.* at 107. Plaintiffs' counsel then responded, "You can record the verdict, Your Honor." N.T. Trial (8/12/2010) at 107. The court then recorded the verdict. *Id.* The jury's verdict was inconsistent with this court's jury instructions and the uncontroverted evidence presented; however, the this court should not compensate the unprepared trial lawyer for omissions that could have been easily corrected with a timely objection. See *Dilliplaine*, 457 Pa. at 259; *Picca*, 645 Pa. at 871-872. If counsel stated he was not satisfied with the verdict and voiced an objection, this court would have further instructed the jury in reaching a proper verdict. Plaintiffs' failure to object regarding medical damages must not be

the basis of a new trial. A new trial would allow plaintiffs a second bite of the proverbial apple simply because counsel failed to object; and therefore plaintiffs' weight of the evidence claim is waived.

## III. Conclusion

Plaintiffs allege this court erred by refusing to schedule an evidentiary hearing due to alleged juror misconduct and that the weight of the evidence was inconsistent with the jury's verdict. These allegations have no merit. Plaintiffs' request for an evidentiary hearing was properly denied because there is no competent testimony that can be presented regarding the jury's deliberations. Furthermore, plaintiffs' weight of the evidence claim is waived due to failure to object when the verdict was recorded. For the above reasons this court did not err and its judgment should stand.