J. A33009/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER STARKEY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 502 EDA 2015 |
| | : | |
| JANNIE SEGARS | : | |

Appeal from the Judgment Entered April 7, 2015,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. 130203052

| | | |
|---|---|---|
| MARY SHEAFF BORDERS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JANNIE SEGARS AND CHRISTOPHER | : | |
| STARKEY AND STATE FARM MUTUAL | : | No. 628 EDA 2015 |
| AUTOMOBILE INSURANCE COMPANY | : | |
| A/K/A STATE FARM INSURANCE | : | |

Appeal from the Judgment Entered April 2, 2015,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. October Term, 2012, No. 2178

| | | |
|---|---|---|
| PAULA PRESSLEY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 630 EDA 2015 |
| CHRISTOPHER STARKEY AND | : | |
| JANNIE SEGARS | : | |

Appeal from the Judgment Entered April 2, 2015,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. October Term, 2013, No. 003622

|                                            |   |                                    |
|--------------------------------------------|---|------------------------------------|
| HELEN WILKERSON,                           | : | IN THE SUPERIOR COURT OF           |
|                                            | : | PENNSYLVANIA                       |
| Appellant                                  | : |                                    |
|                                            | : |                                    |
| v.                                         | : |                                    |
|                                            | : | No. 636 EDA 2015                   |
| JANNIE SEGARS AND                          | : |                                    |
| CHRISTOPHER STARKEY                        | : |                                    |

Appeal from the Judgment Entered April 2, 2015,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. March Term, 2013; No. 1854

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED March 14, 2016**

Christopher Starkey ("Starkey"), Mary Sheaff Borders ("Borders"), Paula Pressley ("Pressley"), and Helen Wilkerson ("Wilkerson")[1] appeal the orders of the Court of Common Pleas of Philadelphia County that entered judgment against them and in favor of Jannie Segars ("Segars").[2]

---

* Retired Senior Judge assigned to the Superior Court.

[1] By order dated July 5, 2015, this court consolidated the appeals of Starkey, Borders, Pressley, and Wilkerson.

[2] Segars identifies herself as "Jannie" when she testifies.  However, at times in various pleadings she is referred to as "Janine."  This court will refer to her as "Jannie."

On March 17, 2012, a vehicle operated by Segars was stopped at a traffic light while traveling north on Broad Street at the intersection of Broad Street and Butler Street in the City of Philadelphia. A vehicle operated by Starkey was stopped at the traffic light behind Segars' vehicle. Borders, Pressley, and Wilkerson were passengers in the back seat of Starkey's vehicle. The two vehicles made contact with each other.

Starkey commenced an action in the trial court and sought damages in excess of $50,000 for injuries suffered as a result of Segars' negligence. Starkey alleged:

> 5. On or about the 17th day of March, 2012, at approximately between 3:00-4:00 p.m., Plaintiff, CHRISTOPHER STARKEY, was traveling northbound on Broad Street in Philadelphia, Pennsylvania, attempting to cross Butler Street on a green light, when, suddenly and without warning, the motor vehicle directly in front of their car in the intersection, owned and operated by Defendant, JANNIE SEGARS, stopped abruptly, backed up her motor vehicle, and violently crashed into Plaintiff's motor vehicle not once, but rather twice.

Complaint, 2/28/13 ¶5 at 1-2.

Segars answered and denied the allegations and, in fact, asserted that Starkey's vehicle struck her vehicle twice at the intersection.

Borders alleged in her complaint that Segars' vehicle struck Starkey's vehicle. However, Borders also asserted that if the trial court accepted Segars' version of the accident, Starkey was negligent. Borders sought

damages in excess of $50,000 for injuries she allegedly suffered as a result of the negligence.

Wilkerson alleged in her complaint that Segars' vehicle struck Starkey's vehicle. As a result of Segars' and/or Starkey's negligence, Wilkerson alleged that she suffered permanent injuries which resulted in damages in excess of $50,000.

Pressley also alleged in her complaint that Segars' vehicle struck Starkey's vehicle and she suffered injuries as a result of the negligence and carelessness of Segars and Starkey. She also asserted damages in excess of $50,000.[3]

In the three cases involving the passengers in Starkey's vehicle, Segars filed a crossclaim against Starkey. On October 24, 2014, at a pre-trial conference, the trial court bifurcated the matter such that a trial would proceed on the issue of liability only.

The trial commenced on January 9, 2015. Counsel for Borders, Wilkerson, and Pressley did not appear at the trial. Segars testified on cross that on March 17, 2013, the Jeep Compass she was driving was "rear-ended" by Starkey's vehicle in the vicinity of Broad and Butler. (Notes of testimony, 1/13/15 at 29.) Segars further testified that there were a couple of cars in front of her at the intersection. (*Id.* at 31.) Segars

---

[3] By order dated February 12, 2014, the trial court consolidated the four cases.

explained that while the light was red, she was struck from behind twice by Starkey's vehicle. (*Id.* at 37-40.) She reported that when she and Starkey exited their respective vehicles, Starkey told her that he did not see her car because he "was fighting with a bee." (*Id.* at 43.)

Starkey testified as to what occurred when the vehicles made contact:

> So we're sitting there for a moment waiting for the light to change. The next moment the light changed. I go to look at the light and it changes to green. And by the time the light changed to green, within a matter of seconds I see this lady backing up. And everybody in the car that was in view of the vehicle started to react including me. And I, of course, was driving and Andre was sitting in the passenger's seat. So I grabbed the stick to put the car in reverse. But before I could even get the car in reverse, to reverse away from her and keep our distance, she banged us. She hit us.

*Id.* at 56. Starkey related that there was a second impact shortly after the first. (*Id.* at 59.)

Wilkerson testified regarding the accident:

> We pulled up to the light. The light had just turned red and he stopped. We were sitting there. The next thing, the light turned green. Then all of a sudden this big car in front of us . . . went boom and I went back. It startled me. The next thing I know again the car went boom, boom. And I went forward and I hit my head on . . . the headrest.

*Id.* at 93-94.

Pressley testified that she did not see how the impact occurred but felt the impact. Shortly after that, Segars' vehicle struck Starkey's vehicle twice more. (*Id.* at 108-109.)

Borders, who is Starkey's mother, testified that Starkey's vehicle was stopped at a red light when there was "One bump, boom. I mean a hard bump. Second bump, boom. And I think a third bump." (*Id.* at 126.) Borders related that the contact came from Segars' vehicle. (*Id.* at 126.)

The jury found that neither Segars nor Starkey was negligent.

Starkey moved for post-trial relief and sought a new trial on the basis that the jury refused to make a credibility determination and rendered an impossible verdict which did not agree with either Starkey's or Segars' accounts of the events in question. Starkey asserted that the jury's verdict was against the weight of the evidence, was unsupported by the facts, and shocked the conscience. He further asserted that the jury did not understand its instructions regarding negligence and that the trial court should have directed the jury to return to deliberation until negligence and liability were decided.

Starkey also moved for judgment notwithstanding the verdict because no reasonable jury would have made the decision. Starkey asserted that he and the other passengers in the car all testified consistently that Segars' vehicle struck Starkey's vehicle when it backed up, while Segars' testimony was inconsistent. Once again, Starkey asserted that the jury's verdict was a miscarriage of justice, was the result of prejudice and/or misapprehension of the law and/or facts, was against the weight of the evidence, and shocked the conscience.

By order dated February 11, 2015, the trial court denied Starkey's post-trial motions. The trial court subsequently explained that Starkey waived his right to a judgment notwithstanding the verdict and a new trial when he failed to move for a directed verdict or object to the verdict at the close of trial. The trial court explained that Starkey failed to preserve the basis for his requested relief because he did not raise it during trial or at the close of trial as required under Pa.R.C.P. 227.1:

> In the case at bar, neither party objected to the verdict or the verdict form. Thus, for Appellant's [Starkey] counsel to have preserved his stated grounds for appeal, the record must show that Appellant's [Starkey] counsel objected to the specific issue of the verdict form and jury verdict. As stated infra, in order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post trial motions. *Takes v. Metro Edison Co.*, . . . 695 A.2d 397, 400 ([Pa.] 1997). Requiring a litigant to make a timely, specific objection during trial ensures that the trial court has a chance to correct alleged trial errors. This 'waiver rule' prevents the trial from becoming a mere dress rehearsal and ensures trial counsel is prepared to litigate the case and create an adequate record for appellate review. *Id.* There are a litany of appellate rulings within the Commonwealth that have stressed the importance of this waiver doctrine. See e.g. *McMillen v. 84 Lumber, Inc.*, [] 549 A.2d 932 ([Pa.] 1994).

Trial court opinion, 4/23/15 at 5.

The trial court also determined that even if the issues were preserved, Starkey was not entitled to judgment notwithstanding the verdict because the evidence was such that reasonable minds could disagree as to whether a

verdict should have been rendered in favor of Starkey. Similarly, the trial court determined that Starkey was not entitled to a new trial because the jury verdict was not against the weight of the evidence.[4]

Starkey[5] has raised the following issue for this court's review:

> Whether the trial court abused its discretion and otherwise committed an error of law in denying Plaintiff/Appellant's post-trial motion seeking a new trial because the jury's verdict was against the evidence and the weight of the evidence when it found that neither moving Plaintiff nor Defendant/Appellee [Segars] was negligent?

Appellant's brief at 6.[6]

Starkey does not address the trial court's basis for its denial of his post-trial motion. The trial court denied the post-trial motion for a new trial because it determined that Starkey failed to comply with Pa.R.C.P. 227.1(b)(1) as he failed to raise the issue of a new trial after he was presented with the jury's verdict.

Pa.R.C.P. 227.1(b) provides in pertinent part:

---

[4] Wilkerson essentially filed the same post-trial motion which was denied. Pressley moved for post-trial relief and requested the same relief as Starkey. Borders filed a post-trial motion and requested a new trial. Borders also joined in the motions filed by Starkey and Wilkerson. The trial court denied these motions.

[5] Wilkerson, Borders, and Pressley essentially raise the same issue in their respective briefs.

[6] This court's review is limited to a determination of whether the trial court acted capriciously, abused its discretion, or committed an error of law. **Parker v. Frelich**, 803 A.2d 738 (Pa.Super. 2002).

> Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,
>
> (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and
>
> (2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

In ***Picca v. Kriner***, 645 A.2d 868 (Pa.Super. 1994), this court addressed the necessity of raising the issue of an inconsistent jury verdict before the trial court discharges the jury. Lester Kriner ("Kriner"), while traveling at a speed of 25-30 miles per hour hit Jennifer Picca's ("Picca") vehicle from behind while Picca was stopped at a stop light. After the collision, Picca experienced neck and back pain. Picca sued Kriner. Kriner admitted that he was at fault in the accident. Kriner's expert witness admitted that Picca probably suffered an injury in the form of a minor ligament and muscle strain as the result of the accident but did not consider it significant. The expert attributed her pain to pre-existing degenerative disc disease which was unrelated to the accident. The trial court directed the jury to find Kriner negligent. The jury did as instructed but found that Kriner's negligence did not contribute to Picca's injuries. Picca brought

post-trial motions for judgment notwithstanding the verdict or a new trial. The trial court granted the motion for a new trial because the jury verdict was so contrary as to shock the conscience because it could not believe that Picca created her physical complaints and that the jury's verdict was incredible. *Id.* at 869.

This court noted that the jury's second interrogatory stated, "Was the defendant's negligence a substantial factor in bringing about the plaintiff's harm?" *Id.* at 870. This court reasoned that the "most logical referent to the phrase 'the plaintiff's harm,' is **all** of the injuries which Picca alleged to have been caused by the accident and which she sought to prove at trial." *Id.* at 870 (emphasis in original). In other words, the jury could have concluded that while Kriner may have caused some injury to Picca, he may not have been a substantial factor in causing all of Picca's alleged injuries. Therefore, the jury's answer to the interrogatory could have been reasonable. Picca did not object to the submission of the interrogatory to the jury. Further, Picca did not object when the jury returned its verdict which deprived the trial court of the opportunity to determine whether the jury incredibly found that Kriner caused no injury at all or whether the jury considered Kriner's contribution to Picca's injuries insubstantial. If the latter were the case, the trial court could have instructed the jury to find Kriner liable for the portion of Picca's injuries that he caused which would have eliminated any need for a new trial. *Id.* at 870-871.

This court referred to ***Philadelphia Police Department v. Gray***, 633 A.2d 1090 (Pa. 1993), where a jury found that SEPTA was 25% negligent in causing a collision with a police car but that that negligence was not a substantial factor in causing the injuries suffered by a passenger on the SEPTA trolley. Our Pennsylvania Supreme Court found that the passenger waived any right to a new trial when she failed to object to the inconsistent jury verdict before the jury was dismissed. ***Id.*** at 870, citing ***Gray***, 633 A.2d at 1095.

This court determined that Picca waived her right to ask for a new trial when she failed to raise any objection to the verdict before the jury was dismissed:

> We cannot tell whether the jury incredibly found that Picca suffered no injuries, or whether it found that Kriner's negligence did not cause enough of Picca's alleged injuries to make his negligence a substantial factor in bringing them about--a mistaken, albeit reasonable, interpretation of the second verdict interrogatory. It does not matter, however, because in either event, Picca waived her right to ask for a new trial by not objecting to the problems with the verdict before the jury was dismissed.
>
> The main purpose of the familiar waiver rule announced in ***Dilliplaine*** [***v. Lehigh Valley Trust Co.***, 322 A.2d 114 (Pa. 1974.)], and recently interpreted by ***Gray*** [633 A.2d 1090 (Pa. 1993)] is to avoid holding new trials through timely, specific objections which give the trial judge an opportunity to recognize errors and correct them. When a party seeks a new trial because the jury returned an inconsistent, irrational, incredible, or otherwise problematic verdict, ***Dilliplaine*** would logically require that the party point out the verdict problems

to the trial judge before the jury is dismissed. That way the judge can explain to the jury why its verdict is problematic and that judgment cannot be entered upon it. The jury can then resume deliberations in light of the court's corrective instructions, and return an error-free verdict. This rule does not require us to invade the jury's sacred deliberation process or find out why the jury did what it did; the court need only explain that the verdict returned makes no sense for the specific reasons raised in counsel's objections, and ask the jury to reconsider its decision in light of its new instruction.

*Gray* applied the *Dilliplaine* rule to the problem of inconsistent jury verdicts, but there is no reason why the rule would be limited to inconsistency problems. The rule should apply whenever the jury returns a verdict which is objectionable for any reason. An *en banc* panel of this Court recently recognized this logical consequence of the *Dilliplaine* rule in *Curran v. Greate Bay Hotel and Casino* [] 643 A.2d 687 (Pa.Super. 1994), appeal denied, 652 A.2d 1323 (Pa. 1994). The panel held that parties must not wait for post-trial motions to argue that the jury verdict is too flawed to sustain a judgment. Such arguments must be made before the court discharges the jury. 'it is this failure to act before the jury was discharged that constitutes waiver.' [*Gray*]. The purpose of requiring action is to enable the jury to correct an obvious mistake.' *Curran*, [] 643 A.2d at 691.

*Picca*, 645 A.2d at 871.

Here, when the jury's finding that neither Starkey nor Segars was negligent was revealed in open court, Starkey did not lodge an objection before the jury was dismissed. He only requested that the jurors be polled. Starkey now argues that the trial court erred when it allowed this verdict to be entered in the docket as a complete decision and did not instruct the jury to continue its deliberations. Starkey sought a new trial in his post-trial

motions. However, Starkey did not raise this issue at trial before the jury was discharged. As this court held in **Picca**, Starkey cannot seek a new trial for the first time in post-trial motions. We agree with the trial court that Starkey did not preserve this issue as required under Pa.R.C.P. 227.1(b)(1) and **Picca**.

Judgments affirmed.

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 3/14/2016